## Case No. 11,234.

PLUMMER v. WEBB et al.

[1 Ware (75), 69.] [1]

District Court, D. Maine. June Term, 1825.

ADMIRALTY—ASSAULT ON MINOR CHILD—LIBEL BY FATHER — DEATH OF CHILD — MERGER OF PRIVATE WRONG IN A FELONY.

1. The ancient doctrine of the common law, founded on the principles of the feudal system, that a private wrong is merged in a felony, is not applicable to the civil policy of this country, and has not been adopted in this state.

[Cited in The Harrisburg, 119 U. S. 205, 7 Sup. Ct. 142.]

[Cited in Rogers v. Huie, 1 Cal. 435.]

2. A libel may be maintained by the father, in the admiralty, for the consequential damages resulting from an assault and battery of his minor child on the high seas. But to support the action he must show either actual damage, or that which is held to be such by intendment of law, and the action may be maintained after the death of the child, though the death was occasioned by the severity of the battery.

[Cited in Sullivan v. Union Pac. R. Co., Case No. 13,599; Waring v. Clarke, 5 How. (46 U. S.) 486; Mendell v. The Martin White, Case No. 9,419; The Charles Morgan, Id. 2,618; The Garland, 5 Fed. 926; The E. B. Ward, 17 Fed. 458; The Manhasset, 18 Fed. 924; The Columbia, 27 Fed. 720; The Harrisburg, 119 U. S. 205, 7 Sup. Ct. 142.]

3. An action for the personal injury of a minor must be in the name of the child, and the damages recovered will be for the use and benefit of the child, and not of the parent.

This was a libel filed by Moses Plummer against the respondents, the master and first and second mates of the brig Romulus, for various assaults and batteries alleged to have been made on John S. Plummer, the

[1] [Reported by Hon. Ashur Ware, District Judge.]

minor son of the libellant. It was proved at the hearing that Michael Webb, the master, received the son on board the vessel at the father's request; that he was to serve without wages, and perform such services as were proper for a boy of his age, being twelve or thirteen years old, and that in consideration of his services the master should instruct him in the duties of a seaman. It was the understanding at the time, that the vessel should perform a double voyage before her return to this port, that is, should make two voyages to Europe, and that the boy was to remain with the vessel until her return to this place. On his return here, the owners might pay him such wages as his services were thought to be worth, but they were not bound to pay any. One voyage was performed to Liverpool and back, by the way of Savannah, to New Orleans, where the brig lay a considerable time waiting for freight. Soon after leaving New Orleans, on her second voyage to Liverpool, the boy sickened and died, in consequence of the beating and ill usage he had received. The libel charges several batteries during this period, and several are proved against the first mate, but no evidence was offered implicating the second mate, nor was any instance of beating brought home directly to the master. It was contended for the libellant that the evidence disclosed such a criminal negligence and inattention on the part of the master in suffering a boy of his tender age, who was placed in a peculiar manner under his protection, to be repeatedly beaten by his first officer, that for this negligence he ought to be held as a joint trespasser; that it is the duty of the master, in all cases, to protect the men under his command from the abuse of his subordinate officers, and that this obligation in the present case was enhanced by the peculiar circumstances of trust and confidence under which the boy was placed in his charge.

C. S. Daveis, for libellant.
Fessenden & Deblois, for respondents.

WARE, District Judge. Several questions of law have been raised and discussed at the bar, which require to be disposed of before we can arrive at the merits of the case, as disclosed in the evidence. They have been urged as a bar to the libellant's right to recover against either of the respondents, under any state of facts which can exist.

It is contended, in the first place, that the father cannot maintain an action, because the tort, as alleged in the libel, amounts to a felony, and that the private wrong is merged in the public crime; and in the second, that if any right of action ever existed, it is extinguished by the death of the son before the commencement of the suit. The case of Higgins v. Butcher, Yel. 90, is relied upon as an authority at common law, directly in point. That was an action brought by the husband for the battery of his wife. The battery was the cause of her death, and the action was brought after her decease. It was ruled that an action for a personal tort, done to the wife, did not lie for the husband alone, but the wife must join; and the damages being recoverable for the benefit of the wife, the right of action died with her, and did not survive for the husband. It is further added, that if a man beat the servant of another so that he die of the extremity of the beating, no action will lie for the master, because the private wrong is swallowed up and lost in the public offence.

The doctrine here stated, of the merger of the private wrong and civil remedy in a public crime, was an ancient principle of the common law, and seems to result as a natural and logical consequence flowing from the fundamental principles of the feudal system. Under that system, all property, or at least all landed property, was assumed to belong to the sovereign and superior lord. The grants which were made to private persons did not convey the absolute property, but only a usufructuary interest, and this was granted upon condition. If the conditions were not performed, this interest was forfeited, and the land reverted to the grantor, in whom the ultimate proprietary right had continued to reside. Wright, Ten. c. 1. One of the conditions implied in every feudal grant was that the tenant should not commit felony. The commission of a felony was therefore a forfeiture of the whole of the feudatory's interest in the grant. 2 Bl. Comm. 153. The common law extended this forfeiture to his goods and chattels, as well as his lands. There would therefore be no remedy which could reach the real estate of the wrongdoer, because all the interest which he had in that, ceased from the moment that the offence was committed, and reverted to the donor. And as to his personal estate, a species of property of little consideration in the early ages of the common law, the title which the crown acquired by forfeiture took precedence of any claim which a private person might have to damages to be recovered against the party. The forfeiture extending to the whole property of the felon, and the crime being capital and punished by death, nothing remained to satisfy a private demand, and no person against whom the action could be brought. The private action was therefore necessarily gone, or as it is usually expressed, the private wrong was merged in the felony. But these principles have never been adopted in this state. There is with us no forfeiture of goods resulting from felony, nor are all felonies punished by death. In this state, therefore, an action may be maintained for the private wrong, although the act which is the foundation of the suit amounts to a felony. Boardman v. Gore, 15 Mass. 331. This doctrine of the merger of the civil remedy in the public crime, which is a natural

and logical consequence of the fundamental and organic principles of feudal society, is entirely in opposition to the system of civil polity established in this country. And modern decisions in England have overruled the old cases on this point. The case of Crosby v. Leng, 12 East, 409, shows that an action may be maintained for a wrong amounting to a felony after the party has been convicted or acquitted of the public offence, provided the acquittal is not obtained by collusion. As to the other point ruled in the case cited, if the meaning be that the husband cannot recover damages for the mere personal wrong to his wife, it may be true; but if the meaning be that an action will not lie in his name alone for consequential damages, as for the loss of her services and society, and the expenses of her cure, however the law may have been formerly, I understand the contrary to be now well established. 3 Bl. Comm. 140; Chit. Pl. 61; Com. Dig. "Baron and Feme," W; Cro. Jac. 538.

But whatever may be thought of the law of that case, its application to the case at bar is not admitted. It is not questioned that an action does lie for the parent for a battery of his child. It is, however, contended that it does not lie after the death of the child which is the subject of the tort.

The private injury resulting from an assault and battery may be regarded under a twofold aspect. First, the direct and immediate personal injury, the bodily pain and suffering occasioned by the beating, and the mental anguish and humiliation resulting from the disgrace of being beaten. Secondly, the collateral or consequential injury, the loss of labor and service, and the expenses of cure which may be occasioned by the severity of the battery. The first wrong necessarily spends itself on the individual who is the subject of the battery, and as he is the only sufferer, upon the first principles of natural justice he only is entitled to the amends. For this damage, the husband cannot sue alone, because it is naturally due to his wife. But as, by the principles of the common law, the wife is not permitted to sue in her own name alone, she shall be joined in the action by her husband, or, to speak more correctly, the husband shall join in her action, because it is prosecuted for her benefit, and the damages survive to her use if the husband die before they are recovered. Com. Dig. "Baron and Feme," V; Russel v. Corne, 1 Salk. 119, 2 Ld. Raym. 1031; 1 Chit. Pl. 61. The second falls on the person who is entitled to the labor and service of the person who is the subject of the battery, and who is bound for the expenses of his cure. For this loss, the law gives him an action for damages. The death of the child or servant through whom the injury is done, before the commencement of the suit, if it is a consequence of the battery, aggravates the injury; if the death is occasioned by other causes, it leaves it as it stood before. It neither enhances or diminishes the loss. It is not easily perceived upon what principles of natural right the remedy should be taken from a party by an event which he could not control, and which leaves his rights unimpaired and his wrong unredressed. The case of Winsmore v. Greenbank, Bull. N. P. 78, is an authority to show that the death of the person through whom the injury was done, before the commencement of the suit, is not a bar to the action.

But if the parent's right of action is not extinguished by the death of the child before the commencement of the suit, it is material to inquire what damages he can recover in an action in his own name, or what damages he is entitled to in his own right. The natural and obvious answer to the inquiry is, that he can recover such damages as he has sustained in consequence of the wrong. And it is upon this ground that the law places the action. Its foundation is the loss of service, and it is so stated in all the authorities. But it seems to have been assumed at the argument that, although this is the ground of the action, or the material circumstance which enables the court to render a judgment for damages, yet that the court, having a legal ground for sustaining the judgment, may proceed to award damages beyond the loss of service and for causes which would not of themselves support an action in the parent's name. The action was likened to an action of trespass by the parent for the seduction of his daughter. This also has its foundation in the loss of service, and will not lie without a per quod servitium amisit. But in point of fact, the service, in the estimate of damages, is merely nominal. If the child is a minor, it is assumed as a presumption of law that she is a servant. No service need be proved, nor is it necessary, to support the action, that she should be an inmate of her father's family. Martin v. Payne, 9 Johns. 387. And if she be over twenty-one and lives in her father's family, the slightest acts of service are sufficient to support the heaviest damages. Reeve, Dom. Rel. 291, 292. The allegation of loss of service is necessary to let in the action, but the substance of the wrongs for which damages are awarded is the disgrace, and humiliation, and wounded feelings of the family; wrongs for which the law gives no remedy, unless they are tacked to a nominal or fictitious menial service. The law, in this case, allows a deviation from strict logical principles, in the interest of good morals; for in cases of seduction, unless the parent could recover damages no recovery could be had, and the heartless depravity of the cold-blooded destroyer of the peace of families would escape unpunished. The suit of the child is answered by the maxim, "Volenti non fit injuria." She is particeps criminis, and the law will allow her no action, the foundation of which is laid in her own turpitude. But in the case of an assault and battery, the law is different.

The parent and child may each have their distinct action for their separate wrongs. The loss of service falls on the parent, who is entitled to the labor of his child, and for this the law gives him a remedy by an action. But the wrong which is merely personal, the pain and anguish of body and mind, are the injuries of the child, which he only can feel, and for which he is entitled to his separate action, and the damages are recovered for his benefit. The damages of the parent or master, and of the child or servant, are in their nature several and distinct, and a recovery by one is no bar to an action by the other. Reeve, Dom. Rel. 376; Gray v. Jefferies, Cro. Eliz. 55.

Can the parent, then, upon the facts of this case, maintain an action for the loss of the services of his child? The child was not living in his father's family. He was placed by the parent in the custody of one of the respondents as a servant, who, by the parent's agreement, at the time of the several assaults complained of, was entitled to his services, so that if there was any loss of service, it did not, in this case, fall on the parent, but upon the master, who for the time had succeeded to his rights in this respect. Had the battery been committed on the boy by any other person than one of the ship's crew, by which he should have been rendered incapable of doing duty during the period included in the agreement, no doubt can be entertained that the master could have recovered damages for the injury. The rights of the master in this respect are as well established as those of the parent. But if the master could have maintained an action, this would necessarily have excluded the action of the father for the same cause. Considering the suit as an action for the loss of service,—and on no other ground can it be maintained,—my opinion is that it cannot be sustained.

As against Mr. Merritt, the second mate, it is dismissed with costs. There is no part of the evidence which attaches any blame to him. With respect to the master and first mate, it is dismissed without costs. There can be no doubt upon the evidence, that the boy was unreasonably beaten, and if he were alive to prosecute the suit for his own wrongs it would be a clear case for damages. There is indeed no direct proof that he was beaten by the master. But it was the master's duty to protect him from the violence of his subordinate officers. I do not admit the correctness of the argument of the counsel for the respondents, that the master in this form of action, is not liable for non-feasance. It is his duty to interpose his authority for the protection of all his men from the intemperate violence of his inferior officers, and if he suffers them to be ill-treated he ought to be held as a joint trespasser. He is intrusted by the law with the supreme power on board of his ship, and what is done by his permission must be considered as done by his authority. In the present case, the obligation

19FED.CAS.—57

to protect this boy was particularly strong, because he was placed in his care under peculiar circumstances.

[The circuit court on appeal held that the case was not wholly within the jurisdiction of the admiralty, and so remitted the parties to their action at common law. Case No. 11,233.]

PLUMSEL (HOLTZMAN v.). See Case No. 6,650.

PLUMSELL (McCLEAN v.). See Case No. 8,693.

PLUNKETT (WOLF v.). See Case No. 17,926.

PLUTO, The (FAGAN v.). See Case No. 4,605.

PLYMOUTH, The (FISHER v.). See Case No. 4,822.