716 A.2d 1158

MARTHA NEGRON, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF WILLIAM NEGRON AND MARTHA NEGRON, PERSONALLY, PLAINTIFF–APPELLANT, v. RAMON LLARENA, M.D., DEFENDANT–RESPONDENT, AND LIGIJA ROCIUNAS, M.D., DEFENDANT.

Argued September 23, 1997—Decided July 23, 1998.

*David Taback*, a member of the New York bar, argued the cause for appellant (*Callan, Regenstreich, Koster & Brady*, attorneys; *Barbara Brosnan Rivera*, on the brief).

*Jared P. Kingsley* argued the cause for respondent (*Bumgardner, Hardin & Ellis*, attorneys).

The opinion of the Court was delivered by

HANDLER, J.

In this case, the decedent died following medical treatment for injuries suffered in an automobile accident in New Jersey. His surviving wife, a New York resident, commenced a wrongful death action in New York federal district court. Jurisdiction was purportedly based on diversity of citizenship, the defendant being a New Jersey hospital. Shortly thereafter the case was transferred to New Jersey federal district court. Following the transfer of the action, the plaintiff amended the complaint, joining two additional defendants, the treating doctors who were staff physicians of the defendant hospital and also residents of New Jersey. Thereafter, the federal action was dismissed because of the lack of diversity jurisdiction. The plaintiff then filed this identical wrongful death action in State Superior Court.

New Jersey's Wrongful Death Act requires that an action for wrongful death be brought within two years of the date of death. Because the wrongful death complaint in the New Jersey State court was filed more than two years after the date of decedent's death, the issue presented by this appeal is whether the wrongful death statute of limitations may be tolled or deemed satisfied by the timely filing in a federal district court of a complaint that, because of the absence of subject-matter jurisdiction, is later dismissed after the statutory period of limitations.

I

William Negron suffered injuries after crashing his taxicab into a storefront in New Jersey. He received medical treatment following the accident at defendant, Christ Hospital, which is located in Jersey City, New Jersey. He died on January 24, 1991, from the injuries suffered in the accident. On October 23, 1991, plaintiff Martha Negron, the *administratrix ad prosequendum* of the estate of William Negron, filed a wrongful death action in the United States District Court for the Southern District of New York against Christ Hospital. At the time suit was filed, Martha Negron resided in the state of New York.

On December 18, 1991, the United States District Court for the Southern District of New York transferred the action to the United States District Court for the District of New Jersey. On March 2, 1992, plaintiff amended her complaint to add defendants Dr. Ramon Llarena and Dr. Ligija Rociunas. Defendant Christ Hospital was dismissed.

After the completion of discovery, the case was scheduled for trial on January 23, 1995. On November 28, 1994, the suit was voluntarily dismissed, without prejudice, on the ground that the court did not have subject matter jurisdiction.

On February 16, 1995, plaintiff filed this complaint in the Superior Court of New Jersey, Hudson County, Law Division. The complaint alleged the same facts and causes of action that plaintiff had claimed in federal court. Defendants moved for summary judgment, arguing that the action had not been filed in New Jersey within the two-year statute of limitations for wrongful death actions. The trial court denied defendants' motion for summary judgment and tolled the statute of limitations.

Defendant Llarena appealed. The Appellate Division, in an unreported decision, reversed that judgment. We granted plaintiff's petition for certification. 147 *N.J.* 579, 688 *A.*2d 1055 (1997).

## II

New Jersey's Wrongful Death Act provides that "[e]very action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter." *N.J.S.A.* 2A:31-3. Because this period of limitation was enacted as part of the Wrongful Death Act, it has been regarded as "an indispensable condition" of the right to maintain a wrongful death action. *Peters v. Public Serv. Corp.*, 132 *N.J. Eq.* 500, 507, 29 *A.*2d 189 (N.J.Ch.1942), *aff'd per curiam*, 133 *N.J. Eq.* 283, 31 *A.*2d 809 (E. & A.1943). It has therefore been characterized as a substantive statute of limitations, *Marshall v. Geo. M. Brewster & Son, Inc.*, 68 *N.J.Super.* 399, 403, 172 *A.*2d 458 (App.Div.1961), *rev'd. on other grounds*, 37 *N.J.* 176, 180 *A.*2d 129 (1962), not a "statute of limitations in the ordinary or general sense," *Eldridge v. Philadelphia & Reading R.R. Co.*, 83 *N.J.L.* 463, 465, 85 *A.* 179 (E. & A.1912).

A substantive statute of limitations can be distinguished from an ordinary or "procedural" statute of limitations. *White v. Violent Crimes Compensation Bd.*, 76 *N.J.* 368, 374, 388 *A.*2d 206 (1978). Procedural statutes of limitations govern general causes of action, such as torts and contracts. *See* Marian Joyce, Note, *Tolling of Substantive Statutes of Limitation—* White v. Violent Crimes Compensation Board, 32 *Rutgers L.Rev.* 95, 95 (1979). The running of a procedural statute of limitations bars only the remedy, not the right. *Ibid.* In contrast, substantive statutes of limitations restrict statutory causes of action that did not exist at common law. *Ibid.* A substantive statute of limitations, as a condition precedent to bringing suit, bars not only the remedy, but also the right itself. 22A *Am.Jur.*2d *Death* at §§ 57, 76 (1988).

Procedural statutes of limitations are not applied strictly. Flexible applications of procedural statutes of limitations may be based on equitable principles, such as the discovery rule, *e.g. Lopez v. Swyer*, 62 *N.J.* 267, 300 *A.*2d 563 (1973), or estoppel, *e.g.*, *O'Keeffe v. Snyder*, 83 *N.J.* 478, 416 *A.*2d 862 (1980). In contrast,

substantive statutes of limitation are traditionally applied strictly. *White, supra,* 76 *N.J.* at 376, 388 *A.*2d 206 (noting that "[w]ith respect to a substantive limitation period, traditional and respectable authority has construed a party's noncompliance with its requirements as an absolute bar to his claim"); *accord Kaczmarek v. New Jersey Turnpike Auth.,* 77 *N.J.* 329, 339, 390 *A.*2d 597 (1978) ("A limitation contained in a statute creating a new right was generally considered a condition precedent to the existence of the right itself, *i.e.,* if not met by the charging party, that party's complaint would fail.").

Consistent with its interpretation as a substantive statute, the wrongful death statute of limitations has been applied strictly by New Jersey courts. *Marshall, supra,* 68 *N.J.Super.* at 403, 172 *A.*2d 458 ("In New Jersey it is settled that our two-year limit is an integral part of the right to sue ... and that no suit can be maintained unless brought within two years of such a death."); *accord Bretthauer v. Jacobson,* 79 *N.J.L.* 223, 225–26, 75 *A.* 560 (Sup.Ct.1910) (ruling that bringing wrongful death action within the then-one-year period was an essential element of cause of action that had to be set forth as part of complaint). As the Chancery Court held in *Peters, supra:*

The Death Act is a statute of creation and the commencement of the action within the time limit is an indispensable condition of the liability and of the action which it permits. If the action is not instituted within the time limit the defendants are exempt from liability. There being no saving[s] clause in our statute, this court is without power to ingraft any exception to interfere with [the] limit of ... time within which suit must be brought.

[132 *N.J. Eq.* at 507, 29 *A.*2d 189.]

The Appellate Division, in this case, determined that " 'the two-year limitation in New Jersey's wrongful death act [*N.J.S.A.* 2A:31–3] is not a "statute of limitations in the ordinary or general sense," but is a condition of the right granted,' " and that "condition must be met before the party has the right to file a wrongful death action."

The interpretation of the meaning and intended application of substantive statutes of limitations has undergone a significant change in recent times. In *White, supra,* 76 *N.J.* 368, 388 *A.*2d

206, the Court reexamined the question of whether a substantive statute of limitations could be subject to exceptions from its strict application. The statute of limitations involved in *White* was that contained in the Criminal Injuries Compensation Act, *N.J.S.A.* 52:4B–1 to –49, which provided compensation to innocent victims of violent crimes who submit an application to the Violent Crime Compensation Board (VCCB) "within 1 year after the date of the personal injury or death." *White, supra,* 76 *N.J.* at 371–72, 374, 388 *A.*2d 206. The plaintiff in *White* had been the victim of a brutal assault and rape. *Id.* at 370, 388 *A.*2d 206. After repeated diligent attempts to obtain assistance, she applied for relief under the Act; her application to the VCCB, however, was filed seven weeks after the limitations period had expired. *Id.* at 370–72, 388 *A.*2d 206. The Court held "that in the case of a statutorily created right, a 'substantive' limitation period may appropriately be tolled in a particular set of circumstances if the legislative purpose underlying the statutory scheme will thereby be effectuated." *Id.* at 379, 388 *A.*2d 206.

The Court also emphasized the relevance of considerations of public policy and legislative intent in determining whether the substantive statute of limitations could be relaxed. The Court considered the critical question to be whether relaxation of the statute of limitations would comport with the legislative intent. *Id.* at 377, 388 *A.*2d 206. Accordingly, the Court found no policy underlying the Criminal Injuries Compensation Act that would prohibit tolling the statute of limitations for a victim's crime-induced incapacity; further, even though the period of limitations was created as part of the statutory right, there was no apparent legislative intent to cut off all claims after a specified time from the commission of the crime, regardless of the equities involved. *Id.* at 385–86, 388 *A.*2d 206.

*White* 's significant change in the interpretive approach to substantive statutes of limitation clearly is relevant to the wrongful death statute of limitations. In *Marshall, supra,* 37 *N.J.* 176, 180 *A.*2d 129, the Court was confronted with a conflict-of-laws ques-

tion, namely, whether Pennsylvania's or New Jersey's wrongful death statute of limitations should be applied in a wrongful death action brought in New Jersey arising out of a Pennsylvania accident. *Id.* at 179, 180 *A*.2d 129. On accepted conflict-of-laws principles the Court determined to apply New Jersey's statute, finding that the Pennsylvania statute of limitations was a procedural and not a substantive statute. *Id.* at 186–88, 180 *A*.2d 129. Implicit in the Court's analysis in *Marshall* was that the New Jersey wrongful death statute of limitations, as a substantive statute of limitations, constituted a condition of the cause of action and consequently was not amenable to any interpretation that could alter its strict application. *Id.* at 182–83, 180 *A*.2d 129.

That assumption, however, was implicitly abandoned in the recent case *Gantes v. Kason Corp.*, 145 *N.J.* 478, 679 *A*.2d 106 (1996). There, a products-liability action was brought in New Jersey by the representative of a Georgia decedent who had been killed while at work in Georgia, allegedly because of a defective machine that had been manufactured in New Jersey. *Id.* at 482–83, 679 *A*.2d 106. In considering a choice-of-law issue similar to that posed in *Marshall*, the Court determined that the Georgia statute of repose applicable in products-liability actions was similar to a substantive statute of limitations. *Id.* at 495, 679 *A*.2d 106. The Court also acknowledged that as a substantive part of the statute defining the cause of action, the statute of repose would ordinarily be applied as a constituent part of the substantive law of the place of the accident. *Ibid.* Nevertheless, the Court ruled that the statute should be construed to ascertain its underlying legislative purpose and intent in order to determine whether, in light of Georgia's public policy, it should be applied as a condition of the cause of action to bar the New Jersey products-liability action. *Ibid.* Following that interpretive standard, which focused on legislative purpose and intent, the Court concluded that application of the Georgia statute of repose to the New Jersey action based on the Georgia accident would not fulfill any of its underlying legislative purposes and, therefore, the statute of repose ought not apply as a condition of the underlying action, but that New

Jersey's wrongful death statute of limitations should apply. *Id.* at 497–98, 679 *A.*2d 106.

■ Thus, this Court's approach to substantive statutes of limitations has evolved to one that recognizes that their application depends on statutory interpretation focusing on legislative intent and purpose. *See Kaczmarek, supra,* 77 *N.J.* at 339, 390 *A.*2d 597 (noting that in *White,* the Court eschewed its previous strict or "mechanistic" approach to substantive statutes of limitations "for a more flexible legislative-purpose test"). The Court in *White* explicitly adopted such an approach, following the reasoning of the United States Supreme Court in *Burnett v. New York Central Railroad,* 380 *U.S.* 424, 85 *S.Ct.* 1050, 13 *L. Ed.*2d 941 (1965), and the Fourth Circuit in *Scarborough v. Atlantic Coast Line Railroad,* 178 *F.*2d 253 (1949), *cert. denied,* 339 *U.S.* 919, 70 *S.Ct.* 621, 94 *L. Ed.* 1343 (1950). *White, supra,* 76 *N.J.* at 376–77, 388 *A.*2d 206. Those courts looked beyond the form of the limitations period, that is, whether it was "substantive" or "procedural," to determine whether tolling of the limitations period would effectuate the legislative purpose of the statute. *Ibid.*

### III

■ Looking to the Wrongful Death Act, "there is nothing reflective in the objectives of [the Act] or its history that suggests the Legislature intended to foreclose the familiar doctrine of substantial compliance in the [statute of limitations] context." *Cornblatt v. Barow,* 153 *N.J.* 218, 240, 708 *A.*2d 401 (1998). The doctrine of substantial compliance allows for the flexible application of a statute in appropriate circumstances. In the circumstances of this case where an action, though later dismissed, was filed within the time prescribed by the statute of limitations, we can turn initially to that doctrine to determine whether the condition implicit in the statute of limitations may be deemed to have been satisfied and whether plaintiff's complaint was timely filed.

"Courts invoke the doctrine of substantial compliance to 'avoid technical defeats of valid claims.'" *Id.* at 239, 708 *A.*2d 401 (quoting *Zamel v. Port of New York Auth.*, 56 *N.J.* 1, 6, 264 *A.*2d 201 (1970)). In *Bernstein v. Board of Trustees of Teachers' Pension & Annuity Fund*, 151 *N.J.Super.* 71, 376 *A.*2d 563 (1977), the Appellate Division set forth what the defaulting party must show in order to prove substantial compliance:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim[;] and (5) a reasonable explanation why there was not a strict compliance with the statute.
>
> [*Id.* at 76–77, 376 *A.*2d 563.]

In *Cornblatt, supra*, we adopted that formulation of the substantial compliance framework. 153 *N.J.* at 239–40, 708 *A.*2d 401.

■ Application of the doctrine of substantial compliance to Negron's filing of her wrongful death complaint results in a firm conclusion that she has substantially complied with the Wrongful Death Act's statute of limitations. Following the *Bernstein* factors in order, first, Negron's failure to file her wrongful death complaint in New Jersey court within the statute of limitations did not prejudice defendant because the filing came immediately following dismissal in federal court. Defendant could not have been prejudiced because he was already prepared for the lawsuit. Second, Negron clearly took "a series of steps" to comply with the statute of limitations in that she filed her federal complaint within the appropriate time frame and then filed her state complaint immediately after her federal complaint was dismissed. Third, in filing both of her complaints diligently, Negron generally complied with the purpose of the statute of limitations. Fourth, the federal complaint with the ensuing discovery process adequately notified defendant of Negron's claim.

The final consideration for substantial compliance is whether Negron had a reasonable explanation for her failure to comply strictly with the statute of limitations. Answering that inquiry depends on an analysis of federal diversity jurisprudence in wrongful death actions. To recapitulate the procedural posture of

this case at the time Negron filed her suit in federal court, Negron was a citizen of New York and defendants were citizens of New Jersey. Decedent, Negron's husband, was a citizen of New Jersey at the time of his death. Negron filed suit in federal district court claiming complete diversity. On November 28, 1994, the district court dismissed the claim, stating only that the matter was dismissed for "want of subject matter jurisdiction." Because the district court did not explain its ruling, we can only assume that the court found that the suit lacked in complete diversity because a wrongful death plaintiff takes the citizenship of the decedent.

However, Negron had a colorable claim in believing that complete diversity did exist at the time of filing her complaint in federal court. Under 28 *U.S.C.A.* § 1332(c)(2), for diversity purposes, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent. . . ." Congress enacted that provision in 1988 in an attempt to resolve a circuit split in dealing with a decedent's estate for diversity purposes. *See Pallazola v. Rucker,* 797 *F.*2d 1116 (1st Cir.1986) (reviewing the circuit split).

In the context of wrongful death cases, applying § 1332(c)(2) has not produced the resolution Congress intended. Three district courts have determined that § 1332(c)(2) applies to a wrongful death action and thus that the representative bringing suit is deemed to be a citizen of the same state as the decedent. *See James v. Three Notch Medical Ctr.,* 966 *F.Supp.* 1112 (M.D.Ala. 1997); *Liu v. Westchester County Medical Ctr.,* 837 *F.Supp.* 82 (S.D.N.Y.1993); *Green v. Lake of Woods County,* 815 *F.Supp.* 305 (D.Minn.1993). Three other district courts have found the opposite: that a person bringing a wrongful death suit is not a "legal representative of the estate of a decedent" under § 1332(c)(2) because the plaintiff is bringing suit on his or her own behalf and not on behalf of the estate; thus, § 1332(c)(2) would not apply. *See Winn v. Panola–Harrison Elec. Coop., Inc.,* 966 *F.Supp.* 481 (E.D.Tex.1997); *Marler v. Hiebert,* 960 *F.Supp.* 253 (D.Kan.1997); *Tank v. Chronister,* 998 *F.Supp.* 1160 (D.Kan.1997) (reversing, on

motion for reconsideration, its own opinion holding to the contrary in *Tank v. Chronister,* 951 *F.Supp.* 182 (D.Kan.1997)). Because of the law's lack of clarity on this point, it was reasonable for Negron to have brought her original suit in federal court; therefore, Negron's failure to comply strictly with the wrongful death statute of limitations in her state suit has a reasonable explanation.

Accordingly, Negron has satisfied all five of the requirements for a finding of substantial compliance. The application of the doctrine of substantial compliance obviates additional consideration of whether equitable tolling or the discovery rule should be invoked to toll the statute of limitations. We note, however, that both doctrines in appropriate circumstances, such as those presented by this case, can be relevant in determining whether the statute of limitations should be tolled. *See, e.g., Galligan v. Westfield Centre Serv., Inc.,* 82 *N.J.* 188, 412 *A.*2d 122 (1980) (holding that the statute of limitations for a survivorship case would be equitably tolled by the timely filing of an action in federal court improperly based on diversity of citizenship jurisdiction); *Mitzner v. West Ridgelawn Cemetery, Inc.,* 311 *N.J.Super.* 233, 709 *A.*2d 825 (App.Div.1998) (applying *Galligan* ).

## IV

The judgment of the Appellate Division is reversed.

HANDLER, J., concurring.

The rule of construction applicable to substantive statutes of limitation is one that focuses on legislative intent and purpose. That construction serves to explain why, in the circumstances of this case, the wrongful death statute of limitations should not be strictly applied to foreclose a wrongful death claim that was not technically timely filed. I write separately here to show that the conclusion that the legislative purpose and intent will not be frustrated by this application of the statute of limitations is fortified by the history of wrongful death actions.

## I

In England, *Higgins v. Butcher*, 80 *Eng. Rep.* 61 (K.B.1607), was the first reported case supporting the rule that no common-law cause of action exists for wrongful death. In ruling that the husband had no cause of action for the tortious beating of his wife resulting in her death, Justice Tanfield did not distinguish between a survival action and a wrongful death action but wrote that

if a man beats the servant of J.S. so that he dies of the battery, the master shall not have an action against the other for the battery and loss of the service, because the servant dying of the extremity of the battery, it is now become an offence to the Crown, being converted into felony, and that drowns the particular offence, and private wrong offer'd to the master before, and his action is thereby lost.

[*Ibid.*]

That pronouncement of the law became known as the "felony-merger rule." The rule was repeated in another case decided seventy years later, *Smith v. Sykes,* 89 *Eng. Rep.* 160 (K.B.1677): "[I]f A. beat the wife of B., so that she dies, B. can have no action of the case for that; because it is criminal, and of a higher nature." *Ibid.*

The issue of recovery for wrongful death did not appear again in any reported case for well over a century. In 1808, Lord Ellenborough, in *Baker v. Bolton,* 170 *Eng. Rep.* 1033 (Nisi Prius), declared: "In a civil Court, the death of a human being could not be complained of as an injury." *Ibid. Baker* involved a husband suing stagecoach proprietors for his wife's injuries and ultimate death one month later as a result of traveling in the stagecoach. *Ibid.* Lord Ellenborough concluded that the plaintiff could recover only for injuries he suffered while his wife was still alive but suffering and not for injuries after her death. *Ibid.*

*Baker* is the acknowledged source of the rule that the common law denies recovery for wrongful death. *See, e.g.,* T.A. Smedley, *Wrongful Death—Bases of the Common Law Rules,* 13 *Vand. L.Rev.* 605, 613 (1960); W.S. Holdsworth, *The Origin of the Rule in* Baker v. Bolton, 32 *L.Q. Rev.* 431 (1916). Lord Ellenborough, however, cited no authority and gave no reasoning for his famous pronouncement that no action for wrongful death existed.

In the United States, recovery for the wrongful death of another went through a much different history. In fact, recovery for wrongful death seemed to have been accepted in colonial and early post-revolutionary times.

The first trace of allowing for the recovery for wrongful death appears in 1682 in Pennsylvania colonial law. The basic law applicable for the colony stated that "the estates of capital offenders, as traitors, and murderers, shall go one-third to the next of kin to the sufferer." 24th & 25th Laws Agreed Upon in England (1682), *in Duke of York's Book of Laws* 101 (1879), *quoted in* Wex S. Malone, *The Genesis of Wrongful Death*, 17 *Stan. L.Rev.* 1043, 1062 (1965). States generally disavowed the felony-merger rule and recognized actions for the wrongful death of another. *See* 1 Stuart M. Speiser et. al., *Recovery for Wrongful Death and Injury* § 1:3 at 1–14 n.16 (3d ed.1992) (noting that in a judicial proceeding that was both criminal and civil, the Massachusetts Bay Colony's Court of Assistants consistently allowed for recovery for the death of another); Malone, *supra*, 17 *Stan. L.Rev.* at 1063, 1065 (pointing out that reported cases show "no serious doubt was entertained as to the propriety of resort to a civil suit" and that "both fine and compensation to the surviving family were imposed indiscriminately"). Moreover, even after *Baker*, American courts successively did not follow its pronouncement and allowed recovery for wrongful death. *See, e.g., Plummer v. Webb*, 19 *F. Cas.* 894 (D.Me.1825) (rejecting felony-merger doctrine as having no place in American law and allowing a father to recover for the death of his son), *dismissed on appeal for lack of admiralty juris.*, 19 *F. Cas.* 891 (C.C.D.Me.1827); *Ford v. Monroe*, 20 *Wend.* 210 (N.Y.Sup.Ct.1838) (affirming a verdict in favor of a father who had brought suit for the loss of services because his infant son had been run over and killed as the direct consequence of tortious act of the defendant).

Thus, by mid-nineteenth century, the common law in America recognized an action for wrongful death. Malone, *supra*, 17 *Stan. L.Rev.* at 1067 ("Ellenborough's blunt announcement that no civil

action can be grounded upon the death of a human being not only · lacked historical support at the time but was consistently ignored in America."); Lawrence M. Friedman, *A History of American Law* 473–74 (2d ed. 1985) ("There were clear signs in the early 19th century that American courts had never really accepted the [*Baker* ] rule."); Francis B. Tiffany, *Death by Wrongful Act* § 6 at 9 (2d ed. 1913) ("Lord Ellenborough's rule was not universally recognized in this country."). The United States Supreme Court itself criticized the historically-grounded justification for the rule in England, if there was any, as having "never existed in this country." *Moragne v. States Marine Lines, Inc.,* 398 *U.S.* 375, 384, 90 *S.Ct.* 1772, 1779, 26 *L. Ed.*2d 339, 347 (1970).

## II

A statutory action for the wrongful death of another was first created in England with the passage of Lord Campbell's Act in 1846. 9 & 10 *Vict.* ch. 93. The preamble of the Act, included in its first section, states as follows: "Whereas no Action at Law is now maintainable against a Person who by his wrongful Act, Neglect, or Default may have caused the Death of another Person, and it is oftentimes right and expedient that the Wrongdoer in such Case should be answerable in Damages for the Injury so caused by him. . . ." *Id.* § I. The Act also included a statute of limitations: "Provided always, and be it enacted, That not more than One Action shall lie for and in respect of the same Subject Matter of Complaint, and that every such Action shall be commenced within Twelve Calendar Months after the Death of such deceased Person." *Id.* § III.

In England, neither *Baker* nor Lord Campbell's Act was the subject of a reported decision until 1873. In *Osborn v. Gillett,* [1872–3] 8 *L.R.-Ex.* 88 (1873), a father brought suit against the defendant because the defendant's servant negligently drove a wagon and horses over the plaintiff's daughter, killing her. *Id.* at 88–89. The father claimed that as a result of her death he suffered a loss of her services and incurred the expenses of burial.

*Id.* at 89. For an unexplained reason, the case was not brought under Lord Campbell's Act (although the Act is mentioned in the opinion) but rather under the common law. The three judge court split two to one, ruling that the common law did not recognize the wrongful death cause of action. *Id.* at 93, 99–100. Both majority opinions relied almost completely on Lord Ellenborough's statement in *Baker v. Bolton* and the preamble to Lord Campbell's Act that states that no action existed at common law. *Ibid.* However, Lord Bramwell, a highly regarded and influential jurist, *see* Anita Ramasastry, *The Parameters, Progressions, and Paradoxes of Baron Bramwell,* 38 *Am. J. Legal Hist.* 322 (1994), vigorously disagreed. The dissenting opinion of Lord Bramwell pointedly argued that the rule announced in *Baker* is insupportable by reason and cases:

> But in this case it seems to me that the principle the plaintiff relies on is broad, plain, and clear—viz., that he sustained a damage from a wrongful action for which the defendant is responsible; that the defendant, to establish an anomalous exception to this rule, for which exception he can give no reason, should shew a clear and binding authority, either by express decision, or a long course of uniform opinion deliberately formed and expressed by English lawyers or experts in the English law. I find neither. With the exception of a short note of the case of *Baker v. Bolton* there is no semblance of an authority on this side of the Atlantic, and the cases from the other side are merely founded on that one, and some vague notion of merger in a felony.
>
> [*Osborn, supra,* [1872–3] 8 *L.R.-Ex.* at 99.]

More than thirty years later, a unanimous panel of the King's Bench rejected an attempt to ensconce Bramwell's reasoning as law by concluding merely that the rule of *Osborn v. Gillett* must prevail. *Clark v. London Gen. Omnibus Co.,* [1906] 2 *K.B.* 648 (1906). In 1917, the House of Lords recognized the *Baker* principle as well in *Admiralty Comm'rs v. S.S. Amerika,* [1917] *App. Cas.* 38.

American states enacted wrongful death statutes patterned after Lord Campbell's Act, even though courts generally had recognized a common-law action for wrongful death. 1 Speiser, *supra,* § 1:9 at 1–35. It is both ironic and significant that only after the passage of Lord Campbell's Act and its American counterparts did courts in this country actually announce as an

accepted statement of the law that no action for wrongful death existed at common law.

There was no mention at all of the *Baker* doctrine in the United States until 1848. In the last months of that year, the Massachusetts Supreme Judicial Court decided *Carey v. Berkshire Railroad Co.*, 55 *Mass.* (1 *Cush.*) 475 (1848), and the companion case of *Skinner v. Housatonic Railroad Corp.*, *ibid.* The court found that no cause of action existed for wrongful death. It simply declared that the rule of *Baker v. Bolton* "is the doctrine of the common law." *Id.* at 478. It accepted that doctrine with no acknowledgement of the previous Massachusetts and state cases allowing for recovery for wrongful death.

Other jurisdictions quickly followed that lead. Kentucky, in *Eden v. Lexington & Frankfort Railroad Co.*, 53 *Ky.* 204 (1853), became the first state to cite *Carey* approvingly as the authoritative interpretation of the common law. New York overruled *Ford v. Monroe, supra*, in *Green v. Hudson River Rail Road Co.*, 28 *Barb.* 9, 21–22 (Sup.Ct.1859), *aff'd*, 2 *Abb.App. Dec.* 277 (1866), holding that the common law recognized no claim for wrongful death. Connecticut adopted *Baker* without mentioning its own 1794 decision of *Cross v. Guthery*, 1 *Am. Dec.* 61, in which it allowed recovery for a husband whose wife had died at the hands of the defendant-surgeon. *Connecticut Mut. Life Ins. Co. v. New York & New Haven R.R.*, 25 *Conn.* 265, 271–72 (1856). In 1867, Michigan also adopted the rule of *Baker. Hyatt v. Adams*, 16 *Mich.* 180.[1] Only Georgia and Hawaii did not adopt the *Baker*

---

[1] The Michigan court proffered a moral and religious rationale for its adherence to the rule:

> [T]he reason of the rule is to be found in that natural and almost universal repugnance among enlightened nations, to setting a price upon human life, or any attempt to estimate its value by a pecuniary standard, a repugnance which seems to have been strong and prevalent among nations in proportion as they have been or become more enlightened and refined, and especially so, where the Christian religion has exercised its most beneficent influence, and where human life has been held most sacred.
>
> [*Hyatt*, 16 *Mich.* at 191.]

doctrine. *See* W.E. Shipley, Annotation, *Modern Status of Rule Denying a Common–Law Recovery for Wrongful Death*, 61 *A.L.R.*3d 906, 914–15 (1975) (citing *Shields v. Yonge*, 15 *Ga.* 349 (1854), and *Kake v. Horton*, 2 *Haw.* 209 (1860)).

Nevertheless, despite its acceptance in American jurisprudence, the rule of *Baker* was routinely criticized in the very opinions in which it was adopted. *See id.* at 911–12; 1 Speiser, *supra*, § 1:5 at 1–18 n.33 (listing such cases). Justice Holmes, in dissent, also criticized the rule's basis:

> Without going into the reasons for the notion that an action (other than on appeal) does not lie for causing the death of a human being, it is enough to say that they have disappeared. The policy that forbade such an action, if it was more profound than the absence of a remedy when a man's body was hanged and his goods confiscated for the felony, has been shown not to be the policy of present law by statutes of the United States, and of most, if not all, of the states.
>
> [*Panama R.R. v. Rock*, 266 *U.S.* 209, 216, 45 *S.Ct.* 58, 60, 69 *L. Ed.* 250, 253 (1924).]

In 1970, the United States Supreme Court, in a unanimous decision, abandoned almost a century of precedent in concluding that the common law, in the maritime context, recognizes recovery for wrongful death. *Moragne v. States Marine Lines, Inc., supra.* The Supreme Court reasoned that the rule of *Baker* had been "thrown into discard" even at the time of its adoption in the United States and that it was "difficult to discern an adequate reason" for its continuation in modern maritime jurisprudence. 398 *U.S.* at 381, 90 *S.Ct.* at 1777–78, 26 *L. Ed.*2d at 346.

In *Gaudette v. Webb*, 362 *Mass.* 60, 284 *N.E.*2d 222 (1972), the Massachusetts Supreme Judicial Court was faced with the question of whether the statute of limitations for wrongful death could be tolled by the infant-tolling provision in the Massachusetts code. *Id.* 284 *N.E.*2d at 225. The court reviewed its 1848 decision in *Carey* in light of the United States Supreme Court's then-recent decision in *Moragne*. *Id.* 284 *N.E.*2d at 227–29. It was "convinced that the law in [Massachusetts] has also evolved to the

---

Other courts have repeatedly cited this reason for the *Baker* doctrine.

point where it may now be held that the right to recovery for wrongful death is of common law origin, and we so hold." *Id.* 284 *N.E.*2d at 229. The consequence of that conclusion was that the "wrongful death statutes [would] no longer be regarded as 'creating the right' to recovery for wrongful death," and the statutes would be viewed as "requiring that the action be commenced within the specified period of time, as a limitation upon the remedy and not upon the right." *Ibid.* The court thus allowed the infant-tolling statute to toll the wrongful death statute of limitations. *Id.* 284 *N.E.*2d at 230.[2]

A few other state courts have followed the leads of *Moragne* and *Gaudette* in concluding that their wrongful death actions have common law origins and thus that the wrongful death statute will be applied with common-law principles in mind. *See Hanebuth v. Bell Helicopter Int'l,* 694 *P.*2d 143, 146 (Alaska 1984) (applying the discovery rule to wrongful death actions); *Haakanson v. Wakefield Seafoods, Inc.,* 600 *P.*2d 1087, 1091–92 (Alaska 1979) (stating the court is "in agreement with the spirit" of *Moragne* and *Gaudette*); *Summerfield v. Superior Court,* 144 *Ariz.* 467, 698 *P.*2d 712, 718 (1985) (holding that the wrongful death "statute and precedent have combined to produce a cause of action with common law attributes"); *O'Grady v. Brown,* 654 *S.W.*2d 904, 909 (Mo.1983) (holding that the wrongful death statute incorporates common law principles). *But see Justus v. Atchison,* 19 *Cal.*3d 564, 139 *Cal.Rptr.* 97, 565 *P.*2d 122, 128 (1977) (rejecting *Mo-*

---

2 Both the United States Supreme Court and the Massachusetts Supreme Judicial Court have since put limits on the causes of action recognized in *Moragne* and *Gaudette,* respectively. *E.g. Mobil Oil Corp. v. Higginbotham,* 436 *U.S.* 618, 98 *S.Ct.* 2010, 56 *L. Ed.*2d 581 (1978) (limiting *Moragne* to wrongful death in coastal waters because the Death on the High Seas Act applies to death on the high seas); *Hallett v. Town of Wrentham,* 398 *Mass.* 550, 499 *N.E.*2d 1189 (1986) (holding that the wrongful death statute continued to be the source of procedures and remedies for wrongful death actions); *Pobieglo v. Monsanto Co.,* 402 *Mass.* 112, 521 *N.E.*2d 728 (1988) (over a strong dissent, refusing to apply the discovery rule to the wrongful death statute of limitations because the statutory language is unambiguous). *Moragne* and *Gaudette,* however, remain sound law.

*ragne*'s logic because the California legislature had occupied the field of wrongful death actions leaving no room for common-law development); *Ecker v. Town of West Hartford,* 205 *Conn.* 219, 530 *A.*2d 1056, 1062 (1987) (relying on *stare decisis* ); *Taylor v. Black & Decker Mfg. Co.,* 21 *Ohio App.*3d 186, 486 *N.E.*2d 1173, 1176 (Ohio Ct.App.1984) (same). The *Restatement* has also acknowledged this development with the following statement: "When recognized, this common law right [to recover for wrongful death] has been utilized to fill in unintended gaps in present statutes or to allow ameliorating common law principles to apply." *Restatement (Second) of Torts* § 925 cmt. k (1979).

## III

On March 3, 1848, the New Jersey Legislature passed the Wrongful Death Act. *L.* 1848, *p.* 151. The Act was patterned after Lord Campbell's Act. David Trauth, *Actions for Wrongful Death in New Jersey,* 59 *N.J.L.J.* 121, 121 (1936). The first section of the Wrongful Death Act generally paralleled the first section of Lord Campbell's Act; however, it is significant that the first section did not include the opening statement from Lord Campbell's Act that declared that no cause of action existed at common law for wrongful death. Having obviously patterned the Wrongful Death Act after Lord Campbell's Act, the New Jersey Legislature made a conscious decision to drop the opening statement from its version.

At the time the New Jersey Legislature first acted, the only reported cases in American law were those that allowed for the recovery of damages for the death of another. *Supra* at 318–20, 716 *A.*2d at 1170. No American case had cited Lord Ellenborough's statement of the law from *Baker v. Bolton.* (The Massachusetts Supreme Judicial Court's pronouncement in *Carey* came at the end of 1848.) Malone, *supra,* 17 *Stan. L.Rev.* at 1067 (noting that during the forty-year interval from *Baker v. Bolton* until 1848, *"there was no instance of a denial of a civil action for wrongful death"* (emphasis added)). Thus, it is inferable that the

New Jersey Legislature did not include the introduction from Lord Campbell's Act because it did not perceive that the statement was an accurate summary of the law in New Jersey or the United States.

The first New Jersey case to discuss the origins of the Wrongful Death Act was *Grosso v. Delaware, Lackawanna & Western Railroad Co.*, 50 *N.J.L.* 317, 13 *A.* 233 (Sup.Ct.1888). In that case, the plaintiff was a husband who sued the defendant for the negligent killing of his wife. *Id.* at 317–18, 13 *A.* 233. The Wrongful Death Act's terms did not provide a cause of action in favor of the husband, only the wife, so the husband claimed that his wrongful death action was rooted in the common law. *Id.* at 318, 13 *A.* 233. The court rejected that notion after reviewing the cases of *Higgins v. Butcher, supra, Baker v. Bolton, supra,* and *Osborn v. Gillett, supra. Grosso, supra,* 50 *N.J.L.* at 318–19, 323, 13 *A.* 233. The court found that the "parliamentary declaration of what was the common-law rule [appearing in the beginning of Lord Campbell's Act] must be decisive." *Id.* at 319, 13 *A.* 233. Without proffering a conclusive justification for the rule, however, the court merely stated that "the rule must be held to be one ... originally created for some legal reason which in the mutation of things has crumbled away, leaving the rule so crystallized as to be immovable except by legislative power." *Id.* at 321, 13 *A.* 233. Thus, the court concluded, the Wrongful Death Act's exclusion of a cause of action in favor of the husband cannot be read to mean that the common law allowed for that cause of action. *Id.* at 323, 13 *A.* 233.

Seven years later, the Court of Errors and Appeals adopted the *Grosso* reasoning and conclusion in *Myers v. Holborn,* 58 *N.J.L.* 193, 33 *A.* 389 (1895). In *Myers,* the plaintiff sued because a doctor negligently delivered his wife's baby causing it to die. *Id.* at 194, 33 *A.* 389. The defendant was the doctor who asked the delivering doctor to tend to the wife because the defendant, who normally cared for the wife, was out of town. *Ibid.* The Court rejected the trial court's allowing recovery, basing the rejection on

the theory that the defendant was not responsible for the actions of the other doctor. *Id.* at 195, 33 *A.* 389. However, in *dictum,* the Court stated that it would not allow recovery even had the appropriate doctor been sued because, ever since *Grosso,* "it has been considered as settled law in this state that no action will lie for an injury caused by the death of a human being" with the exception being those causes of actions covered by the language of the Wrongful Death Act (which did not cover the plaintiff's suit). *Id.* at 195–96, 33 *A.* 389. The Court approved the analysis of the *Grosso* court, stating that that decision was "rendered after a careful and exhaustive consideration" and "must be accepted as a correct exposition of the law on [wrongful death]." *Id.* at 196, 33 *A.* 389.

Subsequent early cases in New Jersey accepted the *Grosso* logic and conclusion as the settled state of the law. *See, e.g. Consolidated Traction Co. v. Hone,* 60 *N.J.L.* 444, 38 *A.* 759 (E. & A. 1897); *Callaghan v. Lake Hopatcong Ice Co.,* 69 *N.J.L.* 100, 54 *A.* 223 (Sup.Ct.1903). That has been carried through in modern cases as well. *Turon v. J. & L. Constr. Co.,* 8 *N.J.* 543, 556, 86 *A.*2d 192 (1952); *Schmoll v. Creecy,* 54 *N.J.* 194, 197, 254 *A.*2d 525 (1969); *Alfone v. Sarno,* 87 *N.J.* 99, 104, 432 *A.*2d 857 (1981).

Only one New Jersey case since *Grosso* has discussed the reasoning behind the *Baker* doctrine and indicated that it was insubstantial. In *Giardina v. Bennett,* 111 *N.J.* 412, 545 *A.*2d 139 (1988), parents claimed that the Wrongful Death Act covered the harm they suffered as a result of their child being stillborn. *Id.* at 414, 545 *A.*2d 139. The Court recited that in 1808 *Baker* pronounced that the common law did not recognize recovery for wrongful death, that the House of Lords adopted that conclusion in 1917, that the American states accepted that interpretation of the common law beginning with *Carey, supra,* in 1848, and that New Jersey, following the enactment of its own Wrongful Death Act, adopted that rule beginning with *Grosso, supra,* in 1888 and *Myers, supra,* in 1895. *Id.* at 422–23, 545 *A.*2d 139. The Court

noted that the basis for the *Baker* doctrine, the felony-merger rule, was a "historical curiosity." *Id.* at 423 n. 1, 545 *A.*2d 139.

The Court nevertheless acknowledged the "widespread adoption of the *Baker* rule as stating the common law." *Ibid.* We recounted that the Legislature passed the Wrongful Death Act as a result of that perception of the common-law rule following Lord Campbell's Act. *Id.* at 423, 545 *A.*2d 139. Since then, wrongful death has "consistently been regarded as 'the creature of statute.'" *Id.* at 424, 545 *A.*2d 139 (quoting *Schmoll, supra,* 54 *N.J.* at 197, 254 *A.*2d 525). The Court thus determined that the Act's framers intended to "occupy the field" in respect of wrongful death actions. *Ibid.* We then turned to the intended meaning of "person" under the Wrongful Death Act. We looked to the common law at the time the Wrongful Death Act was enacted to ascertain the intended meaning of the word "person" in the statute and concluded that "it was not generally thought that a fetus could be considered a 'person'" under the Act. *Id.* at 421, 545 *A.*2d 139.

## IV

The Court in *Giardina,* however, did not consider the issue central to the resolution of this case: the Legislature's intended application of the Wrongful Death Act's statute of limitations. The critical issue here remains whether, in light of the history of wrongful death actions, the Legislature by its inclusion of the two-year limitation provision in the Wrongful Death Act intended the limitations requirement to be applied strictly, inflexibly, and without regard to surrounding circumstances.

I would conclude that, based on historical analysis, the Legislature did not intend the Wrongful Death Act's statute of limitations to apply strictly in accordance with its literal language, but rather intended that it be amenable to flexible applications depending on the circumstances consistent with its legislative purpose and considerations of policy.

The history of wrongful death actions raises inescapable doubts that the *Baker* principle is accurate. The proposition that there

was no action for the wrongful death of another under the common law was not an overwhelmingly accepted doctrine in England and was certainly not an accepted principle in the United States. The doctrine was adopted abruptly, and followed uncritically, only after the *Carey* decision (which itself was later repudiated).

The New Jersey Legislature passed the original Wrongful Death Act before any reported American case had denied a cause of action for wrongful death based on common law principles and after reported American cases had allowed for recovery for the death of another. Further, at the time of enactment, no case in America or England had reiterated the *Baker* rule. Malone, *supra,* 17 *Stan. L.Rev.* at 1067 (observing that statements that abound in the decisions of the two decades following the passage of the first wrongful death statutes to the effect that the *Baker* rule is "too firmly established to permit of dissent at this late date" have little support in history). Finally, the New Jersey Legislature did not include the introductory statement from Lord Campbell's Act announcing that no common law cause of action existed for wrongful death, a legislative decision that must be deemed intentional and expressive of the understanding that such a cause of action did exist under the common law.

We are left with the conclusion that a wrongful death action did, in fact, exist at common law, but that the common-law cause of action was, in effect, overtaken by the legislative enactment. There is no evidence to suggest, however, that the Legislature was foreclosing common-law flexibility in the application of the statute of limitations. In a field such as torts, where common law origins and principles abound, legislation may incorporate common-law principles of flexibility and growth. *Cf. Renz v. Penn Cent. Corp.,* 87 *N.J.* 437, 435 *A.*2d 540 (1981) (in determining public policy as a basis for common-law principles, Court considers legislative enactments on the same subject to be highly relevant). It has been recognized that such principles apply to general statutes of limitation, *e.g. Lopez v. Swyer,* 62 *N.J.* 267, 300 *A.*2d 563 (1973); *O'Keeffe v. Snyder,* 83 *N.J.* 478, 416 *A.*2d 862 (1980), to substantive

statutes of limitation, *e.g. Gantes v. Kason Corp.,* 145 *N.J.* 478, 679 *A.*2d 106 (1996); *White v. Violent Crimes Compensation Bd.,* 76 *N.J.* 368, 388 *A.*2d 206 (1978), and to wrongful death statutes of limitations, *e.g., Hanebuth v. Bell Helicopter Int'l, supra,* 694 *P.*2d at 146 (applying the discovery rule to wrongful death actions); *Haakanson v. Wakefield Seafoods, Inc., supra,* 600 *P.*2d at 1091–92 (tolling the wrongful death statute of limitations during the disability of a minor); *Gaudette v. Webb, supra,* 284 *N.E.*2d at 230 (same); *cf. Hernandez v. St. James Hosp.,* 214 *N.J.Super.* 538, 542, 520 *A.*2d 773 (App.Div.1986) (ruling that the wrongful death statute of limitations did not prevent application of the doctrine of relation back); *Lombardi v. Simon,* 266 *N.J.Super.* 708, 713, 630 *A.*2d 426 (Law Div.1993) (same); *Cockinos v. GAF Corp.,* 259 *N.J.Super.* 204, 209, 611 *A.*2d 1154 (Law Div.1992) (same).

Thus, history shows that in enacting the statute of limitations as part of the Wrongful Death Act, the Legislature intended that the period of limitations could be applied with common-law flexibility, in accordance with the legislative purpose, and in light of relevant considerations of public policy. Common-law flexibility incorporates the doctrine of substantial compliance and allows Negron's complaint to be considered timely filed.

Accordingly, I concur specially in the Court's opinion to emphasize that the history of the Wrongful Death Act not only demonstrates the correctness of the result reached by the Court in this case but indeed is highly relevant to the understanding and application of the Wrongful Death Act.

HANDLER, J., concurring in result.

*For reversal*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.