102 N.J. Super. 243 (1968)
245 A.2d 765
SILCO AUTOMATIC VENDING CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
NELLIE HOWELLS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 21, 1968.
*244 Mr. Richard Jon Contant for plaintiff (Messrs. Contant and Contant, attorneys).
Mr. Paul Colvin for defendants Howells and Al's Cozy Inn, Inc.
Mr. Sheldon Schiffman for defendant Rose & Harry James, Inc.
MATTHEWS, J.S.C.
Plaintiff sues defendant Al's Cozy Inn, Inc. for breach of contract, seeking damages, and defendant Rose and Harry James, Inc. for the establishment of a constructive trust resulting from defendants' alleged violation of N.J.S. 12A:6-101 et seq. Defendant Howells has been joined as an agent of defendant Al's Cozy Inn, Inc., and *245 damages for the aforementioned breach of contract are sought against her in the event this court should hold that the contract in question was entered into by defendant Howells without corporate authority.
Plaintiff conducts a business which includes the extensive management and rental of various coin-operated machines, including cigarette vending, music and game machines. Plaintiff's operating procedure involves what is described as an exclusive lease from a customer of space in the customer's place of business (usually a tavern or restaurant) in which the particular machine is located. As "rent" for the use of such space, the proceeds of the machine are divided between plaintiff and his lessor at an agreed rate. Plaintiff states that its business depends on the number of locations in which machines are placed, the volume of business therein, and the length of time for which it has the exclusive right to have its machine located in any particular place; the greater the length of time such right exists, the greater stability and profit the plaintiff can rely on. Plaintiff's usual form of lease provides for a five-year term. Apparently it is the practice in the vending machine business, for the purpose of encouraging continued or more active operation of the business, to make loans to the various lessors and often to pay "bonuses" to said lessors, for the purpose of encouraging continued contractual relations.
During the period with which we are here concerned, defendant Al's Cozy Inn, Inc. operated a tavern business at 507 So. 17th Street, Newark. On or about July 19, 1965 defendant Nellie Howells, an agent for defendant Al's Cozy Inn, Inc., entered into a written agreement with plaintiff in which Al's Cozy Inn, Inc. agreed to lease space to plaintiff for the location of a cigarette vending machine in its place of business at the aforementioned location, for a period of five years. In return for the letting, plaintiff agreed to pay said defendant a commission on each pack of cigarettes sold through the machine. Thereafter, plaintiff installed a cigarette vending machine on defendant's premises, supplied cigarettes *246 therefor, and at fixed periods paid Al's Cozy Inn, Inc., through defendant Nellie Howells, the agreed commission rate, and otherwise performed terms of its contract.
On or about August 23, 1965, in consideration of a loan of $350 by plaintiff to Al's Cozy Inn, Inc., the parties entered into a further written contract under which Al's Cozy Inn, Inc. agreed to lease space to plaintiff for the location of a music machine in its aforementioned place of business for a period of five years. Under this latter agreement plaintiff agreed to pay a commission to Al's Cozy Inn, Inc. based upon the use of the machine. Thereafter, plaintiff installed a music machine on the premises, supplied records therefor, and at stated intervals paid Al's Cozy Inn, Inc. the agreed commission rate, and otherwise performed the terms of its contract. The loan has been completely repaid.
Al's Cozy Inn, Inc. is a New Jersey corporation organized during 1958. It operated a tavern and held a liquor license from September 1958 to August 12, 1966, on which date the business and license were sold to co-defendant Rose and Harry James, Inc. During its existence Al's Cozy Inn, Inc. never owned any real estate, it operated its business at 507 South 17th Street, Newark, under a month-to-month tenancy granted by a landlord who is not a party to this action.
Testimony taken during the trial establishes that plaintiff, upon learning that Rose and Harry James, Inc. had contracted to buy the tavern business from Al's Cozy Inn, Inc., sought on several occasions to induce the principals of Rose and Harry James, Inc. to enter into leases for cigarette and amusement machines. Apparently, some negotiations were carried on, but plaintiff was unable to satisfy the new buyers and consequently Rose and Harry James, Inc. entered into cigarette and music leases with a competitor of plaintiff.
At the closing of the sale of the tavern business Rose and Harry James, Inc. received a bill of sale for various chattels included in the sale. Attached to the bill of sale was a form of affidavit which contained provision for a list of creditors, designed to satisfy the requirements of N.J.S. 12A:6-104. *247 In the space in which creditors would be listed, Al's Cozy Inn, Inc. placed the word "None."
Plaintiff contends that Al's Cozy Inn, Inc. violated the provisions of chapter 6 of Title 12A of the New Jersey Revised Statutes in that no notification was given of its existence as a creditor of that defendant. It also contends that defendant Rose and Harry James, Inc. had sufficient notice of the actual existence of its standing as a creditor of Al's Cozy Inn, Inc. so as to require that Rose and Harry James, Inc. be held a constructive trustee to the extent of the obligation owed by Al's Cozy Inn, Inc. to plaintiff under the aforementioned lease agreements.
As to actual notice on the part of Rose and Harry James, Inc., I find, based on the record before me, that the issue of fact must be resolved against plaintiff. While it may be true that the principals of Rose and Harry James, Inc. probably saw the cigarette machine and a juke box on the premises held by Al's Cozy Inn, Inc., I do not regard that as sufficient notice to the purchaser that plaintiff was probably a creditor of Al's Cozy Inn, Inc. In the testimony elicited before me, it is apparent that no mention was made by any principal of plaintiff who negotiated with the principals of Rose and Harry James, Inc. as to the existence of leases between Al's Cozy Inn, Inc. and plaintiff. All conversations and all negotiations between those parties had to do with the creation of new leases or loan agreements between plaintiff and the purchaser of the tavern business. If anything, such conduct would leave defendant Rose and Harry James, Inc. in a state of believing that no agreements existed between plaintiff and Al's Cozy Inn, Inc., or, at least, that any subsisting agreements were about to be terminated by reason of a sale. For this reason, I conclude that defendant Rose and Harry James, Inc. cannot be held as a constructive trustee, assuming the provisions of N.J.S. 12A:6-101 et seq. are applicable to this transaction. See N.J.S. 12A:6-104(3).
There is an additional reason why Rose and Harry James, Inc. may not be held as a constructive trustee under *248 the provisions of chapter 6 of Title 12A. I cannot conclude that the sale of a business such as that which is the subject matter of this action, i.e., a tavern business, is covered under the bulk transfer provisions of the Uniform Commercial Code. There are no New Jersey cases directly on point in support of this conclusion.
N.J.S. 12A:6-102(3) defines the enterprises subject to the chapter as "those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell." The official study comment appended to this section of the code states:
"2. The businesses covered are defined in subsection (3). Notice that they do not include farming nor contracting nor professional services, nor such things as cleaning shops, barber shops, pool halls, hotels, restaurants, and the like whose principal business is the sale not of merchandise but of services. While some bulk sales risk exists in the excluded businesses, they have in common the fact that unsecured credit is not commonly extended on the faith of a stock of merchandise."
The New Jersey study comment also appended to this section indicates that there was no language in R.S. 46:29-1, the prior Bulk Sales Act, which corresponded to N.J.S. 12A:6-102(3). Our courts decided at least two cases under the prior law, Van Genderen v. Arrow Bus Lines, 107 N.J. Eq. 217 (E. & A. 1930), and Samuelson v. Goldberg, 13 N.J. Misc. 204, 177 A. 260 (Sup. Ct. 1935), which held that sellers covered under the act were only those whose business it was to sell stock or merchandise to intending customers who resort to the place where such stock is kept for sale to such persons. Van Genderen involved the sale of a fleet of buses by a transportation company, and Samuelson involved a poultry farmer.
Cases decided in other jurisdictions indicate that the sale in bulk of liquor, wine and cigars will be construed as within the scope of bulk sales laws as a sale of merchandise, depending upon the language used in the particular statute, *249 while the sale of equipment comes within the act only if the statutes include "equipment" as well as merchandise. See Parham v. Potts-Thompson Liquor Co., 127 Ga. 303, 56 S.E. 460 (Sup. Ct. 1907); Kolander v. Dunn, 95 Minn. 422, 104 N.W. 371, 483 (Sup. Ct. 1905); Marshon v. Toohey, 38 Nev. 248, 148 P. 357 (Sup. Ct. 1915); Pritz v. Jones, 117 App. Div. 643, 102 N.Y.S. 549 (App. Div. 1907); Seattle Brewing and Malting Co. v. Donofrio, 34 Wash. 18, 74 P. 823 (Sup. Ct. 1904); Albrecht v. Cudihee, 37 Wash. 206, 79 P. 628 (Sup. Ct. 1905).
In Berger v. Berger, 271 Wis. 292, 73 N.W.2d 503 (Sup. Ct. 1955), the court held that the Bulk Sales Law applied to merchants selling at retail and that it did not apply to items that are to be processed or to which labor is to be added prior to sale. The court concluded that a question of fact was presented in each case as to the nature of the business. It refused to take judicial notice of the manner in which a tavern business is operated, i.e., mixing drinks, as the addition of labor prior to sale.
In Pennsylvania there are a series of lower court cases which rely largely on the prior Pennsylvania Bulk Sales Act, all of which conclude that an operating tavern and restaurant business is subject to the prior bulk sales provision of the Uniform Commercial Code. The Pennsylvania decisions, which include Plumer v. Flynn, 86 Pa. Dist. & Co. R. 47 (1953); Lazofson v. Steiner, 66 Pa. Dist & Co. R. 179 (1948); Brooks v. Lambert, 10 Pa. Dist. & Co. R.2d 237, 44 Del. Co. 153 (1957); Uhr v. 3361, Inc., 21 Pa. Dist. & Co. R.2d 348 (1960), Miskiel v. Hide-Away Hut, Inc., 12 Bucks Co. L.J. 755 (1963); and Zinni v. One Township Line Corp., 36 Pa. Dist. & Co. R.2d 297, 53 Del. Co. 11 (1964), were all decided under the provisions of the old Pennsylvania Bulk Sales Law, excepting Brooks, Uhr and Zinni, which construed the provisions of the Uniform Commercial Code by using pre-Code precedents. These latter three cases have been criticized in Bender's UCC § 15.02 wherein it is stated:
*250 "Clearly, this application was erroneous and Article 6 should have been held not to have applied to the transaction involved. The reason given for excluding these types of enterprises from the scope of Article 6 is that the particular creditors involved are not normally trade creditors. That is, they have not extended unsecured credit `on the faith of a stock of merchandise.' They may well have extended unsecured credit but it would be with regard generally, to equipment rather than to inventory."
The nature of the transactions under examination here established beyond peradventure that plaintiff at no time relied upon the inventory of Al's Cozy Inn, Inc. when it either entered into the agreements in question or advanced the loan under the second agreement. In support of this finding I observe that the closing statement used at the closing of the sale of the tavern business to Rose and Harry James, Inc., shows that out of a total purchase price of $16,738.23 only $185.73 was allocated for the dollar-for-dollar sale of the inventory on the premises.
On the basis of the facts before me and considering the authorities cited above, I conclude that plaintiff is not entitled to the protection of the provisions of N.J.S. 12A:6-101 et seq.
There remains the question of the liability, if any, of Al's Cozy Inn, Inc. to plaintiff because of the early termination or alleged breach, of the agreements in question. In Silverstein v. Keane, 19 N.J. 1, 12 (1955), our Supreme Court had before it an agreement substantially similar to the agreements presently before this court. The agreement there was characterized in the following language:
"Percentage lease agreements, which are analogous to the agreements involved in the actions under review, are `mainly used where location of the property is a very important part of its value,' but `it is obvious that generally the lessor's return will also depend upon the ability and energy of the lessee.' I American Law of Property (1952), sec. 3.66, p. 321. Covenants to occupy and use the property and to use reasonable diligence to operate the business in a manner productive of profits or receipts have been implied in percentage leases. E.g., Seggebruch v. Stosor, 309 Ill. App. 385, 33 N.E.2d 159, 161 (App. Ct. 1941). The implication of an obligation *251 from the terms of the agreement considering what was written in the light of the attendant circumstances and conditions is a settled principle in New Jersey law. See Casriel v. King, 2 N.J. 45, 51-53 (1949). Cf. William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 485-489 (Ch. Div. 1953), modified 29 N.J. Super. 316 (App. Div. 1954). Cf. Zone Co. v. Service Transportation Co., Inc., 137 N.J.L. 112, 117-118 (Sup. Ct. 1948)." (Emphasis added)
In establishing the obligations between the parties arising out of the agreements before me I must, accordingly, view the provisions of these agreements in light of the circumstances attendant to and surrounding their execution. The provision contained in both agreements with which we are most interested, of course, is that calling for a term of five years. Concededly, defendant Al's Cozy Inn, Inc. is no longer in a position to perform the agreements, despite the fact that the five-year term provided in each had not expired at the time that the inability to perform arose.
It is apparent from the testimony and exhibits which have been adduced before me at trial, that at no time did plaintiff ever attempt to determine either on its own or by asking a representative of Al's Cozy Inn, Inc., the term of the lease under which that corporation operated its tavern business at the premises aforementioned. Nor is there any indication that at any time did any representative of Al's Cozy Inn, Inc. ever indicate the type or term of lease which that corporation held for the premises in question. As I have mentioned, the lease from the third-party landlord was month-to-month.
Similarly, when plaintiff determined that Al's Cozy Inn, Inc. had negotiated to sell the tavern business to Rose and Harry James, Inc., no conversations were held with representatives of Al's Cozy Inn, Inc. with respect to the continuance of the location of the cirgarette and music machines on the premises after the sale. To the contrary, representatives of plaintiff immediately, upon gaining knowledge of the sale, commenced negotiations with representatives of Rose and Harry James, Inc., seeking to have that corporation *252 enter into similar arrangements with it. Mr. James testified at trial, as did a representative of plaintiff. Both indicated that the negotiations they had went to the creation of a relationship between Rose and Harry James, Inc. and plaintiff, and not to the continuance of the arrangements heretofore made between plaintiff and Al's Cozy Inn, Inc.
The inference to be drawn from the factual context of this case is that plaintiffs main object in negotiating leases such as those before the court, is to gain exclusivity and, hopefully, stability with respect to the machines placed on a given premises. Exclusivity appears to be paramount. After obtaining exclusivity, plaintiff seems to be more or less at the mercy of its lessor with respect to the volume of business the machines placed on the premises will produce. If the tavern in which the machines are placed is not popular and does not draw business, the machines will not produce well. It is probably for this reason that no liquidation formula, or liquidated damages formula, is contained in either agreement.
Significance must be given to the fact that neither contract mentions the sale or cessation of the lessors' business during the life of the agreement. With respect to this observation, I point to the negotiations carried on by plaintiff with Rose and Harry James, Inc., once it had gained the intelligence that the tavern business was to be sold. These two facts raise a strong inference that the five-year term contained in the agreements was meaningless unless the lessor, here, Al's Cozy Inn, Inc., remained in the tavern business.
Finally, I do not regard the provision of each contract which states that it "shall be binding on the heirs, devisees, successors and assignees of both parties" to be of any significance in reaching my conclusion. Clearly, defendant Rose and Harry James, Inc. may be placed in none of the classifications described in that phrase.
It is my conclusion that under the facts and circumstances existing here, both of the agreements in question terminated upon the sale of the tavern business from Al's Cozy *253 Inn, Inc. to Rose and Harry James, Inc. and, accordingly, plaintiff is not entitled to judgment against Al's Cozy Inn, Inc. for breach of those contracts. No costs to any party.