FRANK L. BUNTING, PLAINTIFF, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT.

Tax Court of New Jersey

August 27, 1980.

264

William A. Shurts, for plaintiff (Felter, Cain & Shurts, attorneys).

Harley A. Williams, Deputy Attorney General, for defendant (John J. Degnan, Attorney General of New Jersey, attorney).

CONLEY, J. T. C.

These consolidated cases involve the construction of the Sales and Use Tax Act, N.J.S.A. 54:32B–1 et seq., and the Business Personal Property Tax Act, N.J.S.A. 54:11A–1 et seq. The issue presented by this case is whether the sale of certain business equipment was a bulk sale within the meaning of these statutes. If the transaction was such a bulk sale, plaintiff as the purchaser of the equipment became personally liable for the payment of the seller's delinquent taxes when plaintiff failed to give notice of his prospective purchase to the Director of the Division of Taxation at least ten days prior to taking possession of the equipment. The matter is before the court on cross-motions for summary judgment.

The facts have been stipulated. In April 1975 Henry C. Kulak, trading as High Bridge Bakery, entered into a written

lease for the rental of premises which he used for his bakery business. Subsequently, Kulak ceased active operation of the business and fell behind in his rent. Significantly, he failed to file sales tax returns or business personal property tax returns and he failed to pay these taxes. In May 1976 plaintiff Frank P. Bunting paid a total of $2,500 to satisfy Kulak's rental obligation and to purchase certain items of bakery equipment. Of the total sum, $1,557 was allocated to the purchase of equipment. The specific equipment conveyed was set forth in a bill of sale signed by Kulak in which he warranted that he was the owner of the property and that there were no liens against the property. Plaintiff purchased essentially all equipment necessary for a bakery business, including a stove, oven, refrigerator, freezer, sink, table, scale, dough mixer, steam box, bread slicer, doughnut pot, sheet pans, pie tins, metal bins, display cases, rack, shelving, air conditioner, cash register and "miscellaneous baking equipment and any tools." Plaintiff thereupon took possession of the bakery premises and the equipment.

Approximately five months later plaintiff filed a Notification of Sale, Transfer or Assignment in Bulk on a form provided by the Director of the Division of Taxation. Plaintiff filed the form because he was informed by Division personnel that he had an obligation to do so. The Division subsequently advised plaintiff that he had not complied with the bulk sale provisions of the two tax statutes. After a conference the Division issued its final determination that plaintiff was liable for a sales tax deficiency for the period from 1972 to 1975 and for a business personal property tax deficiency for the period from 1968 to 1975. Both of these tax deficiencies were for years prior to plaintiff's acquisition of Kulak's equipment. The total of the deficiencies as of the issuance of the final determination letter, including penalty and interest, was $2,006.11. Interest continues to run on the unpaid taxes. There is no dispute as to the amount of any liability. Rather, plaintiff contends that he has no obligation to pay the sales tax and business personal property

tax deficiencies of Henry C. Kulak because plaintiff did not acquire the business assets of Kulak in a bulk sale.

The statutory requirements for notice to the Director apply to "a sale, transfer, or assignment in bulk of any part or the whole of [a taxpayer's] business assets, otherwise than in the ordinary course of business." The full text of the pertinent section of the Sales and Use Tax Act is as follows:

> Whenever a person required to collect tax shall make a sale, transfer, or assignment in bulk of any part or the whole of his business assets, otherwise than in the ordinary course of business, the purchaser, transferee or assignee shall at least 10 days before taking possession of the subject of said sale, transfer or assignment, or paying therefor, notify the director by registered mail of the proposed sale and of the price, terms and conditions thereof whether or not the seller, transferrer or assignor, has represented to, or informed the purchaser, transferee or assignee that he owes any tax pursuant to this act, and whether or not the purchaser, transferee, or assignee has knowledge that such taxes are owing, and whether any such taxes are in fact owing.

> Whenever the purchaser, transferee or assignee shall fail to give notice to the director as required by the preceding paragraph, or whenever the director shall inform the purchaser, transferee or assignee that a possible claim for such tax or taxes exists, any sums of money, property or choses in action, or other consideration which the purchaser, transferee or assignee is required to transfer over to the seller, transferrer or assignor shall be subject to a first priority right and lien for any such taxes theretofore or thereafter determined to be due from the seller, transferrer or assignor to the State, and the purchaser, transferee or assignee is forbidden to transfer to the seller, transferrer or assignor any such sums of money, property or choses in action to the extent of the amount of the State's claim. For failure to comply with the provisions of this section the purchaser, transferee or assignee, in addition to being subject to the liabilities and remedies imposed under the provisions of the uniform commercial code, Title 12A of the Revised Statutes of New Jersey, shall be personally liable for the payment to the State of any such taxes theretofore or thereafter determined to be due to the State from the seller, transferrer or assignor, and such liability may be assessed and enforced in the same manner as the liability for tax under this act. [*N.J.S.A.* 54:32B–22(c)]

Virtually the same provision is contained in the Business Personal Property Tax Act, *N.J.S.A.* 54:11A–15.

Both parties contend that the terms used in the tax statutes must be given their ordinary and well-understood meaning because neither statute contains definitions of the terms. *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 556 (1976). However, the parties differ as to the ordinary and well-understood mean-

ing of the following phrase: "a sale, transfer, or assignment in bulk of any part or the whole of . . . business assets." The Director's regulations contain no administrative construction of these sections and consequently are of no assistance to the court in ascertaining their meaning. There appears to be no relevant regulation under the Sales and Use Tax Act. See *N.J.A.C.* 18:24–1.1 *et seq.* The regulations under the Business Personal Property Tax Act add nothing to the statutory language. *N.J.A.C.* 18:9–7.1 *et seq. Cf. Automatic Merchandising Council v. Glaser,* 127 *N.J.Super.* 413 (App.Div.1974).

Plaintiff argues that the Legislature intended to incorporate by reference into the Sales and Use Tax Act and the Business Personal Property Tax Act the definition of "bulk transfer" contained in the Uniform Commercial Code. The Code definition is as follows:

> (1) A "bulk transfer" is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (12A:9–109) of an enterprise subject to this Chapter.
>
> (2) A transfer of a substantial part of the equipment (12A:9–109) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise. [*N.J.S.A.* 12A:6–102]

The attorneys representing Kulak and plaintiff attempted in advance to structure the transaction so that it would not be a bulk transfer within the intent of the Code. Kulak sold only his equipment; no items of inventory were involved in the transaction.

The notice provision in each tax statute contains a reference to the Uniform Commercial Code, quoted above but repeated here for emphasis:

> For failure to comply with the provisions of this section the purchaser, transferee or assignee, *in addition to being subject to the liabilities and remedies imposed under the provisions of the uniform commercial code, Title 12A of the Revised Statutes of New Jersey,* shall be personally liable for the payment to the State of any such taxes theretofore or thereafter determined to be due to the State from the seller, transferrer or assignor . . . . [*N.J.S.A.* 54:32B–22(c); *N.J.S.A.* 54:11A–15; emphasis supplied]

Plaintiff's argument continues that because the Uniform Commercial Code definition of bulk transfer was incorporated

into the notification provisions of the tax statutes, only a purchaser's failure to comply with the Code results in a purchaser's personal liability for payment of taxes. Thus, according to plaintiff, transactions which are not bulk transfers under the Code are not covered by the tax notification provisions.

For purposes of the present motion the Director concedes that the sale to plaintiff was not a "bulk transfer" within the meaning of the Uniform Commercial Code because no transfer of inventory took place. The Director contends that the notification provisions in the two tax statutes are applicable to transactions in addition to those considered bulk transfers under the Code. He argues that the commonly understood meaning of the term "sale . . . of . . . business assets" used in the Sales and Use Tax Act and the Business Personal Property Tax Act encompasses the sale of equipment, inventory, real property, goodwill and any other such business asset.

The apparent legislative intent in using the term "sale . . . of . . . business assets" in the tax statutes may be deduced from the purpose of the notification provisions in which the term is found. *Brewer v. Porch*, 53 *N.J.* 167 (1969). It is obvious that the purpose of these provisions is to create an obligation on the purchaser of a business to assist the Director of the Division of Taxation in his collection of tax revenues. A prospective purchaser of part or all of a business must formally alert the Director that an acquisition is about to be made of the assets of a taxpayer so that the Director may examine his records and determine whether the State has a claim for taxes against the taxpayer. If the State has such a claim the Director is then able to satisfy the obligation from the proceeds of the transaction. If the State has such a claim but receives no notice of the transaction, the purchaser assumes personal liability for payment of the taxpayer's deficiency. Thus, a purchaser of all or part of a business who fails to notify the Director of his

intended acquisition assumes the same obligation as that of the taxpayer. The State's claim against the taxpayer is set forth in the State Tax Uniform Procedure Act, *N.J.S.A.* 54:48–1 *et seq.*, in the following language:

> The taxes, fees, interest and penalties imposed by any . . . State tax law, or by this subtitle, from the time the same shall be due, shall be a personal debt of the taxpayer to the State, recoverable in any court of competent jurisdiction in an action in debt in the name of the State. Such debt, whether sued upon or not, shall be a lien on all the property of the debtor except as against an innocent purchaser for value in the usual course of business and without notice thereof, and except as may be provided to the contrary in any other law, and shall have preference in any distribution of the assets of the taxpayer, whether in bankruptcy, insolvency or otherwise. . . . [*N.J.S.A.* 54:49–1]

The purpose of the notification provisions in the bulk transfer chapter of the Uniform Commercial Code is somewhat different. Its purpose is to prevent fraudulent conveyances. The notification procedure enables a merchant's creditors to investigate the price and other circumstances of a proposed sale in order to determine whether they should attempt to stop it, or whether they should take steps to impound the proceeds of the sale. *N.J.S.A.* 12A:6–101, Comments 3 and 4.

Although the Director has some protection as a creditor under the bulk transfer law, it is of limited application. If the court were to adopt the statutory construction urged by plaintiff, the Director's ability to collect taxes would be enhanced only with respect to those enterprises "whose principal business is the sale of merchandise from stock . . .," since only those businesses are subject to the bulk transfer provisions of the Uniform Commercial Code. *N.J.S.A.* 12A:6–102(3). It is significant that many businesses are not so covered, including, for example, farming, contracting, professional services, hotels, restaurants and others whose principal business is the sale of services rather than merchandise. *N.J.S.A.* 12A:6–102, Comment 2. In *Silco Automatic Vending Co., Inc. v. Howells*, 102 *N.J.Super.* 243 (Ch.Div.1968), aff'd 105 *N.J.Super.* 511 (App.Div.1969), the court

held that the sale of a tavern business was not subject to the bulk transfer provisions of the Uniform Commercial Code.

There is no reason to suppose that the Legislature in enacting the notification provisions in the two tax acts was any less concerned about providing assistance to the Director in collecting taxes from businesses selling principally services than from businesses selling principally merchandise. On the contrary, it is reasonable to assume that the Legislature intended to enhance the Director's tax collection opportunities with respect to any businesses. In fact, the term "sale, transfer, or assignment in bulk of any part or the whole of . . . business assets" as used in the tax statutes is considerably broader than the term "transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory of an enterprise," as used in the Uniform Commercial Code. This court holds, therefore, that the notification provision in the Sales and Use Tax Act and in the Business Personal Property Tax Act is more encompassing than the term bulk transfer as used in the Uniform Commercial Code. The reference to the Code in the tax statutes was intended only to clarify that the Legislature did not impliedly repeal the Code's liabilities and remedies when it attributed personal liability to a purchaser for a seller's delinquent taxes.

We recognize the serious implications of this decision. There is no apparent limitation on the dollar amount of delinquent tax liability that may be assumed by the purchaser of a business if he fails to properly notify the Director of an impending closing. Indeed, a purchaser may assume personal liability for the seller's delinquent taxes in excess of the price he pays for the business assets. Nonetheless, compliance with the notification provisions of the tax statutes is uncomplicated. Counsel should be alert to observe the notification procedure in appropriate circumstances.

The notification provisions in the two tax statutes apply to the transaction between Kulak and plaintiff. The assessments made by the Director against plaintiff are affirmed.