SMALL, P.J.T.C.
In this case, we revisit the consequences of the failure to file a timely Notice of Bulk Sale under the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29. The earlier cases helped define what a bulk sale is: Bunting v. Director, Div. of Taxation, 176 N.J.Super. 262, 1 N.J.Tax 189, 422 A.2d 815 (Tax 1980) (holding that the sale of all of a business’s equipment is a bulk sale); New Jersey Hotel Holdings v. Director, Div. of Taxation, 15 N.J.Tax 428 (Tax 1996) (holding that the acquisition of business assets by way of a deed in lieu of foreclosure is a bulk sale). In this case, I find that in order for the bulk sale notice to be effective it must be filed (a) by the purchaser, (b) on the form prescribed by the Director, and (c) at least ten days before the proposed transaction closes.
In order to determine if plaintiff, GABGEO, Inc. (“GABGEO”), a purchaser of a restaurant business and its assets, is liable for the *41 sales tax liabilities of its predecessor, I must decide (1) whether GABGEO complied with the bulk sale notice requirements set forth in N.J.S.A. 54:32B-22(e), (2) whether the State is estopped from proceeding against GABGEO, and (3) whether GABGEO filed its challenges to assessments by the defendant, Director, Division of Taxation (the “Director”) too late.
For the reasons discussed below, I find that (1) GABGEO did not actually or substantially comply with the bulk sale notice requirements of N.J.S.A. 54:32B-22(e), (2) the Director is not estopped from making the challenged assessments, and (3) GAB-GEO’s complaint was timely filed. Accordingly, plaintiffs appeal is denied and judgment will be entered affirming the Director’s assessment.
I.
GABGEO purchased the assets and liquor license of a restaurant from a now dissolved corporation, P. Phaneromeni Corp. (“Phaneromeni”), on July 18, 1997. Approximately four years after the transaction occurred, the Director notified GABGEO of an audit it had conducted of Phaneromeni, and requested that GABGEO pay the sales tax, interest, and penalties owed by Phaneromeni. GABGEO seeks a determination of taxes owed and seeks orders compelling the Director to issue a tax clearance certificate and enjoining the Director, the Director of the Division of Alcoholic Beverage Control (“ABC”) and the Township of Colts Neck[1] from conducting a sale of the GABGEO property. Further, plaintiff seeks a determination that the Director is equitably estopped from proceeding against plaintiff.
GABGEO argues that it provided proper notice of the proposed bulk sale and therefore is not responsible for the taxes, interest, *42 or penalties of Phaneromeni. Furthermore, GABGEO argues that the Director is equitably estopped from proceeding against GAB-GEO. The Director argues that GABGEO did not provide 'proper notice of the proposed bulk sale of the Phaneromeni assets and is responsible for the payment of taxes, interest, and penalties owed by Phaneromeni.- Additionally, the Director argues that GAB-GEO does not have a right to contest the amount of liability owed by Phaneromeni .as any such claim is barred by the statute of limitations.
II.
Phaneromeni was a New Jersey corporation which owned and operated a restaurant in Colts Neck, New Jersey. Phaneromeni also owned a liquor license. By letter titled “Final Warning Visit” dated September 17, 1996 (nine months before Phaneromeni sold its business to GABGEO), the Director notified Phaneromeni that the Director had obtained a judgment against Phaneromeni, George Mavrookas (owner/Chief Executive of Phaneromeni) and his fellow officers and/or partners. An attachment to this letter explained that Phaneromeni owed approximately $195,536.86 to the Director as the result of a determination that it was liable for Sales Tax and Corporation Business Tax for tax years 1991 through 1994 and 1996. The Director had filed numerous judgments in the form of certificates of debt against Phaneromeni for deficient and/or delinquent Sales Tax and Corporation Business Tax. See N.J.S.A. 54:49-12 (authorizing the Director to issue certificates of tax debt to the Clerk of the Superior Court for docketing.)
The September 17, 1996 letter also notified George Mavrookas and Phaneromeni that, before October 4, 1996, Phaneromeni must either pay in full, begin an approved payment plan, or declare bankruptcy. The letter further informed Phaneromeni that if one of these three courses of action were not initiated by October 4, 1996, the consequences would be seizure of the business assets of Phaneromeni, seizure of the personal assets of Mi'. Mavrookas, and/or suit filed by the office of the Attorney General to collect on the debt. Between October 1, 1996 and July 1997, there was *43 correspondence between the Director and Giacomo Duva, attorney for Phaneromeni. Throughout the correspondence, Phaneromeni continually requested extensions based on the possibility of refinancing the business with assistance from Peter Mavrookas, son of George Mavrookas. The Director granted the extensions.
By letter dated July 7, 1997, Mr. Duva notified the Director by first class mail that Phaneromeni had “contracted to sell the business, assets, liquor license, and real property to a bona fide buyer who presently has a loan commitment.” In that letter, Mr. Duva also informed the Director that, while the buyer’s lender had set a closing date of July 17, 1997, a closing could not be guaranteed. This letter did not mention the identity of the prospective buyer, a sale price, firm closing date, or whether the purchaser would assume liability for any taxes owed by the seller.
GABGEO was incorporated on June 27, 1997 to engage in the business of operating a hotel and restaurant with a liquor license. Mr. Duva was listed as the registered agent and Peter Mavrookas (son of George Mavrookas, the principal Phaneromeni owner), was listed as GABGEO’s sole shareholder. On July 18, 1997, GABGEO purchased from P. Phaneromeni, Corp. the physical assets of Phaneromeni and its plenary retail consumption liquor license for an unstated amount of money (the place for a price that is in the bill of sale is left blank). In a separately recorded transaction on that date, George Mavrookas and his wife deeded the real estate in which the business was located to Peter Mavrookas and his wife for a stated consideration of $1,800,000. Although the bill of sale between Phaneromeni and GABGEO, two corporations, included the real property, the recorded deed for the real estate was between the two individuals and their wives.
By letter dated August 29, 1997, the Director notified Phaneromeni that a warrant for satisfaction of the judgment would be prepared and forwarded to the Clerk of the Superior Court “[u]pon receipt of a certified or cashier’s check in the amount of $206,749.13.” On September 2, 1997, Mr. Duva enclosed an attorney trust account check for $187,548.13 with a letter notifying the Director that GABGEO would be responsible for the remain *44 ing balance of approximately $20,000. By letter dated September 4, 1997, the Director notified Phaneromeni that the check for $187,548.13 had been received, the judgments were satisfied, and warrants for satisfaction of judgment would be prepared and forwarded to the Clerk of the Superior Court. As a result of the sale, proceeds of loans obtained by GABGEO were used to pay off creditors of Phaneromeni. The creditors to which Phaneromeni owed in excess of $3,000,000 in total accepted substantially less than the full amounts owed. Negotiations with employees of the Division of Taxation may have led Phaneromeni and its lawyer to believe that they had reached a compromise. However, no closing or compromise agreement under N.J.S.A. 54:53-1 to -15 was executed. See Black Whale v. Director, Div. of Taxation, 15 N.J.Tax 338, 352-56 (Tax 1995) (“The doctrine of apparent authority does not apply to agents of the state.” Id. at 352.).
On September 5, 1997, Peter Mavrookas, president of GAB-GEO, submitted an affidavit to the Director acknowledging that the Director was paid approximately $188,000 for the sales tax owed by Phaneromeni, that there was a remaining balance of approximately $16,000 to $18,000 and that GABGEO would be responsible for the balance. On September 11, 1997 (almost 60 days after the closing of the sale of assets to GABGEO), Mr. Duva, as attorney now for GABGEO, delivered a Notification of Sale, Transfer or Assignment in Bulk (the Bulk Sale Notice) to the Director. It appeal's that this late filed Bulk Sales Notice may have been solicited by employees of the Division of Taxation who had been working on collection of those tax liabilities of Phanero-meni which had been reduced to judgments. The Director issued a conditional tax clearance certificate letter on September 29, 1997, enabling Phaneromeni to transfer its liquor license to GAB-GEO. The letter provided that all taxes due from Phaneromeni would be a lien and attach to the license of GABGEO. On September 29,1997, the Director issued a Notice and Demand For Payment From Transferee to GABGEO. This notice informed GABGEO that Phaneromeni was deficient in payment of taxes in the amount of $34,969.54 and demanded this amount from GAB-GEO as the transferee. By letters dated October 3, 1997 and *45 March 20, 1998, Mr. Duva inquired about the status of the clearance of the transfer of the liquor license from Phaneromeni to GABGEO.
In response to these inquiries, the Director, by letter dated April 1, 1998, informed Mr. Duva that GABGEO had not timely filed its notification of sale, transfer or assignment and, as a result, “the Director was deprived of the opportunity to inform the purchaser and/or his duly appointed representative of the requirements to obtain the Clearance Certificate.” Further, the Director notified Mr. Duva that, had the notification of transfer taken place within the ten day statutory notification period required by N.J.S.A. 54:32B-22(c), Mr. Duva would have been informed of the amount due to the Director and that the Director would have performed an analysis of food and liquor purchases compared to the gross receipts reported by Phaneromeni. Notwithstanding these reservations, the Director informed Mr. Duva that the Director would forego its requirement that money be held in escrow and would issue a conditional clearance certificate to allow the license to be transferred to GABGEO with the caveat that upon completion of an audit, which was currently in progress, the Director would pursue all avenues to collect any liabilities of Phaneromeni from Phaneromeni and/or GABGEO, including possible seizure of the liquor license. Finally, this letter notified Mr. Duva that the amount due at that time was $35,675.
On June 24, 1999, the Director issued a clearance certificate for the renewal of the liquor license of Phaneromeni. The notice indicated that there were no longer any outstanding liabilities for sales tax through the period ending September 1997. The Director then issued a tax clearance certificate for the transfer of the liquor license to GABGEO. The license was transferred to GAB-GEO and GABGEO has, from July 2000, received clearance certificates for renewal of the license pending the results of the audit and subsequently this litigation.
In 1999, the Director completed the audit of Phaneromeni for the tax years 1995, 1996 and 1997. Through the audit, the Director determined that Phaneromeni owed a total of $417,187.90, *46 in sales tax and interest, in addition to the approximately $200,000 delinquency paid at the closing of the sale in 1997. By notice dated October 18,1999, the Director informed Phaneromeni of this audit and of Phaneromeni’s appeal rights. The Director addressed this notice to P. Phaneromeni Corp., Highway 34 & 537, Colts Neck, NJ 07722, which is the address of the business conducted by GABGEO and its predecessor Phaneromeni. The Director notified GABGEO, by notice dated May 15, 2003 (three and one-half years after the notice to Phaneromeni), of their additional transferee liability of $429,790.45 as a result of the 1999 audit of Phaneromeni.
III.
GABGEO argues it is not responsible for the taxes, interest, or penalties of Phaneromeni arising out of the 1999 audit. GABGEO’s conclusion is based on the premise that it was not in existence at the time the taxes were incurred by Phaneromeni and neither GABGEO nor GABGEO’s officers were officers or employees of Phaneromeni. See N.J.S.A. 54:32B-2(w) (defining “persons required to collect tax” to include corporate officers or employees under certain circumstances). GABGEO further argues that, pursuant to N.J.S.A. 54:32B-22(c), they provided proper notice to the Director that the transaction was to take place on July 18, 1997. GABGEO points out that the Director made no objection to the sale and monies were escrowed for the Director by Attorney Duva, pursuant to an agreement made between GABGEO and the Director. Essentially, GABGEO asserts that it “fulfilled the intent and purpose of the statute and in fact, reached an agreement with the Director ... as to the amount of taxes to be paid.” Therefore, plaintiff argues that the Director should be equitably estopped from proceeding against GABGEO.
In arguing that GABGEO did not comply with the bulk sale notice requirements, the Director points out that GABGEO did not notify the Director of the proposed bulk sale by certified mail until September 11,1997, two months after the July 18,1997 sale. Further, the Director argues that GABGEO, in alleging that notice was provided as a result of negotiations between GABGEO *47 and the Director, essentially admits that proper notice did not take place. In any event, as the Director argues, knowledge of pay-off attempts does not provide the Director with sufficient notice of a proposed bulk sale. The Director’s view is correct.
The sales and use tax statute requires that a purchaser in bulk of the business or business assets of another must notify the Director of the proposed sale if it is to avoid transferee liability. The bulk sale notice requirement states:
Whenever a person required to colled, tax shall make a sale, transfer, or assignment in bulk of any part or the whole of his business assets, otherwise than in the ordinary course of business, the purchaser, transferee or assignee shall at least 10 days before taking possession of the subject of said sale, transfer or assignment, or paying therefore, notify the director by registered mail of the proposed sale and of the price, terms and conditions thereof whether or not the seller, transferor or assignor, has represented to, or informed the purchaser, transferee or assignee that he owes any tax pursuant to this act, and whether or not the purchaser, transferee, or assignee has knowledge that such taxes are owing, and whether any such taxes are in fact owing.
Whenever the purchaser, transferee or assignee shall fail to give notice to the, director as required by the preceding paragraph, or whenever the director shall inform the purchaser, transferee or assignee that a possible claim for such tax or taxes exists, any sums of money, property or chooses in action, or other consideration, which the purchaser, transferee or assignee is required to transfer over to the seller, transferor or assignor shall bo subject to a first priority right and lien for any such taxes theretofore or thereafter determined to be due from the seller, transferor or assignor to the State, and the purchaser, transferee or assignee is forbidden to transfer to the seller, transferor or assignor any such sums of money, properly or dioses in action to the extent of the amount of the State’s claim. For failure to comply with the provisions of this section the purchaser, transferee or assignee, m addition to being subject to the liabilities and remedies imposed under the provisions of the uniform commercial code, Title USA of the Revised Statutes of New Jersey, skall be personally liable for the payment to the State of any such taxes theretofore or thereafter determined to be due to the State from the seller, transferor or assignor, and such liability may be assessed and enforced in the same manner as the liability for tax under this act.
[N.J.S.A. 51:32B-22(c) (emphasis added).]
The Director argues that the failure to give the ten day notice under the statute is a “failure to comply with the provisions of this section” which makes the purchaser “personally liable for the payment to the State of any ... taxes ... due to the State from the seller, transferor or assignor.” In support of this argument Director cites Bunting, supra, 176 N.J.Super. 262, 1 N.J. Tax 189, 422 A.2d 815. In Bunting, the Tax Court was called upon to *48 determine whether the sale of certain business equipment was a bulk sale within the meaning of the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29. In finding that the sale of the business equipment in question was indeed a bulk sale within the meaning of the Act, the court held that where the purchaser fails to notify the Director of the proposed sale ten days prior to the purchase, the purchaser of the equipment is liable for the seller’s delinquent taxes. Id. at 195-97, 422 A.2d 815. The Court noted:
It is obvious that the purpose of these provisions is to create an obligation on the purchaser of a business to assist the Director of the Division of Taxation in his collection of tax revenues. A prospective purchaser of part or all of a business must formally alert the Director that an acquisition is about to be made of the assets of a taxpayer so that the Director may examine his records and determine whether the Stale has a claim for taxes against the taxpayer. If the State has such a claim the Director is then able to satisfy the obligation from the proceeds of the transaction. If the State has such a claim but receives no notice of the transaction, the purchaser assumes personal liability for payment of the taxpayer’s deficiency. Thus, a purchaser of all err part of a business who fails to notify the Director of his intended acquisition assumes the same obligation as that of the taxpayer.
[Id, at 195-96, 422 A.2d 815 (emphasis added).]
In another case, this court described the mechanics of N.J.S.A. 54:32B-22(c):
Ten days before a sale, transfer, or assignment in bulk of business assets other than in the ordinary course of business, a purchaser, transferee, or assignee must notify the Director of the Division of Taxation. On receipt of the notice the Director informs the purchaser how much of the consideration to escrow with regard to the seller’s sales tax liability. Following this procedure, the purchaser can effectively limit its liability to the amount of the escrow specified by the Director. Failure to comply with the statute subjects the purchaser to personal liability for any of the seller’s sales tax liabilities.
[New Jersey Hotel Holdings, Inc., supra, 15 N.J.Tax at 432 (Tax 1996) (citing Bunting, supra, 176 N.J.Super. 262,1 N.J.Tax at 195, 422 A.2d 815).]
In New Jersey Hotel Holdings, supra, the Tax Court was called upon to determine whether notice is required under N.J.S.A. 54:32B-22(c) where an individual acquires assets by way of a deed in lieu of foreclosure. In holding that the purchaser is responsible for providing notice under N.J.S.A. 54:32B-22(c), the court reiterated the rule set forth in Bunting, that “failure to give notice to the Director makes a purchaser, transferee, or assignee of assets personally liable for the sales and use tax liabilities of its predecessor.” Id. at 437. Additionally, it should be noted, “there is no limit to the liability of the transferee” Id. at 435.
*49 The sale of Phaneromeni’s assets took place on July 18, 1997. Mr. Duva, acting as attorney for Phaneromeni notified the Director on July 7, 1997 that Phaneromeni had contracted to sell its business, assets, liquor license, and real property to a bona fide purchaser. The letter was deficient under the terms of the bulk sales statute quoted above. Proper notice of the proposed bulk sale in compliance with the statute was not sent to the Director by Mr. Duva, this time acting as attorney for GABGEO, until September 11, 1997, almost two months after the bulk sale. This notice named GABGEO as the purchaser of Phaneromeni’s assets, business, liquor license, and related property (pots, pans, tables and chairs). Because the Bulk Sale Notice was provided after the date of the sale it did not afford the Director an opportunity to inform the purchaser, prior to the transfer of funds, of the amount to be escrowed at the time of the closing of the sale.
GABGEO argues that the letter of July 7, 1997 provided the Director with sufficient notice of the proposed sale, and was, in fact, substantial compliance with the statute. It was not. First, the statute states that the proposed purchaser is the party who is required to notify the Director of the proposed purchase. In the letter of July 7 on which GABGEO relies for compliance with the statute, Mr. Duva was acting on behalf of Phaneromeni, the seller. The opinions in Banting, supra, 176 N.J.Super. 262, 1 N.J.Tax at 195-96, 422 A.2d 815, and New Jersey Hotel Holdings, supra, 15 N.J.Tax at 432, explain that the obligation is on the purchaser to notify the Director of the proposed sale. This requirement operates to inform the Director that the purchaser and seller have communicated as to the purchase price, any owed taxes on behalf of the seller, and whether the purchaser will assume liability for any owed taxes. Mr. Duva’s letter of July 7, 1997 did not inform the Director that Phaneromeni had informed GABGEO of any owed taxes, nor did the letter inform the Director that GABGEO would assume liability of any owed taxes.
Additionally, the sale of the assets from Phaneromeni to GAB-GEO does not have the earmarks of a bona fide sale. The same attorney represented both corporations. The principals of the two corporations were father and son. The selling corporation had a *50 record of substantial tax deficiencies and delinquencies which it had only paid in order to transfer the assets from Phaneromeni to GABGEO, and thereby avoid the sale of those assets by the taxing authority. The sale price of Phaneromeni’s assets and businesses was miniscule compared to the separate price paid by son to father for the real estate, and there is no proof that this price reflected the true value of the real estate or that the price of the business and liquor license reflected their true values.
In order to obtain transferee immunity from sales tax liabilities of the transferor providing proper notice to the Director is vital. While Phaneromeni and GABGEO may have had discussions on the issue of tax liability, it is important that the Director be formally notified in writing, so that the Director has adequate time to take the necessary steps to investigate the tax status of the seller and inform the purchaser of the amount of money to be escrowed in order to insulate itself from transferee liability. As described in New Jersey Hotel Holdings, even with proper and timely notice, the Director has only ten days to conduct an audit of the seller, which ultimately allows the purchaser to limit its liability.
Although not argued by the parties, the recent Appellate Division decision in D.R. Horton, Inc. v. N.J. Dep’t of Envtl. Prot., 383 N.J.Super. 405, 891 A.2d 1253 (App.Div.2006) needs to be addressed. That case finds that substantial compliance with governmental administrative requirements, especially time limits, can avoid the harsh consequences of failing to meet the strict requirements of complete compliance.
“Courts invoke the doctrine of substantial compliance ‘to avoid technical defects of valid claims.’ ” Cornblatt v. Barow, 153 N.J. 218, 239, 708 A.2d 401 (1998) (quoting Zamel v. Port of New York Auth., 56 N.J. 1, 6, 264 A.2d 201 (1970)). In order to prove substantial compliance, the noncomplying party must show:
(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner’s claim; and (5) a reasonable explanation why there was not a strict compliance with the statute.
*51 [Negron v. Llarena, 156 N.J. 296, 305, 716 A.2d 1158 (1998), quoting Bernstein v. Board of Trustees of Teachers’ Pension & Annuity Fund, 151 N.J.Super. 71, 76-77, 376 A.2d 563 (1977).]
In Negron, supra, the plaintiff, a widow, commenced a wrongful death action in federal district court in New York. The action was transferred to New Jersey federal court because the defendant was a New Jersey citizen. The case was dismissed on the grounds of lack of subject matter jurisdiction and the plaintiff, after the expiration of the statute of limitations, commenced action in the Superior Court of New Jersey. The trial court denied defendants’ motion for summary judgment and tolled the statute of limitations. The Supreme Court of New Jersey held that the plaintiff “satisfied all five of the requirements [enumerated in Bernstein] for a finding of substantial compliance.” Id. at 306, 716 A.2d 1158.
More recently, the Appellate Division invoked the doctrine of substantial compliance where the plaintiff mailed a request for a hearing to the Department of Environmental Protection (DEP) four days before the expiration of the statutory period for requesting a hearing. D.R. Horton, Inc., supra, 383 N.J.Super. at 407, 891 A.2d 1253. Due to delays caused by the United States Postal Service, the DEP did not receive the request until two days after the statutory period expired. The DEP denied the plaintiffs request for a hearing because it received the request after the expiration of the statutory period. The Appellate Division, relying on Negron, supra, found that the plaintiff took steps to comply with the statute by mailing the request four days before expiration of the statute of limitations and had a reasonable explanation for failing to strictly comply with the statute. Id. at 410, 891 A.2d 1253.
Here, the plaintiff, in essence, is arguing that it substantially complied with the provisions set forth in N.J.S.A. 54:32B-22(c). It did not. The sale of Phaneromeni’s assets took place on July 18, 1997. Mr. Duva, acting as attorney for Phaneromeni (that is, the seller, not the buyer) notified the Director on July 7, 1997 that Phaneromeni had contracted to sell its business assets, liquor license, and real property to a bona fide purchaser. The letter did not mention that GABGEO was the proposed purchaser. Al *52 though not sent by registered mail, it is not disputed that the Director received the letter. The formal notice was sent and received well after the closing of the bulk sale and the July 7th letter was not the form of notice required by the statute. Proper notice of the proposed bulk sale was not sent to the Director until Mr. Duva, this time acting as attorney for GABGEO, the purchaser, wrote on September 11,1997.
Evaluating the facts in this case against the five standards of Bernstein, supra, 151 N.J.Super. at 76-77, 376 A.2d 563, leads to the conclusion that GABGEO did not substantially comply with the Bulk Sales Notice requirements:
(1) Lack of prejudice to the defending party: Because of the manner in which the Director had notice, the employees who would have done a quick bulk sales audit did not have notice of this responsibility until after the sale closed. Thus, the Director was effectively denied the ability to prescribe an escrow.
(2) A series of steps taken to comply with the statute: Phanero-meni’s dealings with the Director prior to the closing of the sale only dealt with the known liabilities of Phaneromeni. They never addressed other potential liabilities which were discovered only after an audit. The Director was not given adequate notice before the sale to perform this short time frame (ten-day) audit.
(3) General compliance with the purpose of the statute: Here, Phaneromeni could have been said to have informally told the Director about what might happen and when, although not with the procedural rigor that would have drawn the attention of the Division’s bulk sale experts.
(4) A reasonable notice of petitioner’s claim: Here, the Director had some notice of the claim, but not a formal request for immunity from transferee liability, which is a part of the bulk sale notice procedures.
(5) A reasonable explanation why there was not strict compliance with the statute: The reason for lack of strict compliance may have been a lack of care by the applicant. But the applicant would be GABGEO, the purchaser. Up until the closing of the *53 sale, Mr. Duva sent all communications to the Director on behalf of the seller. He first wrote to the Director on behalf of the purchaser, the party seeking protection from transferee liability, two months after the sale closed. Perhaps his own dual representation confused him — it certainly would have confused the Director. Or perhaps he saw himself as representing the same (family) client, that was making a formal transfer of title for the purpose of limiting its liability. In fact, the Director was never asked to insulate GABGEO from Phaneromeni’s liabilities until after GABGEO had paid the full sale price. This effectively frustrated the Director’s ability to tell GABGEO how much of the purchase price to escrow.
IV.
GABGEO argues that the Director should be equitably estopped from seeking to collect taxes, interest, or penalties of Phaneromeni from GABGEO as a result of the audit it conducted two years after the purchase. GABGEO brings to the court’s attention the ten months of negotiations between Mr. Duva, acting on behalf of Phaneromeni, and the Director concerning the amount of taxes owed to secure transfer of the liquor license. The Director relies on the plain language of N.J.S.A. 54:32B-22(c) in arguing that GABGEO cannot limit the dollar amount of its liability, nor invoke estoppel. The only way the Director is estopped from taking actions like those taken in this case would be through compliance with the provisions of bulk sales notification prescribed in the statute or the adoption of a closing agreement pursuant to N.J.S.A. 54:53-1 to -6. See Black Whale, supra, 15 N.J.Tax at 352-56. In this case, statutory procedural requirements for the adoption of a closing or compromise agreement have not been met. See N.J.S.A. 54:53-1 to -18.
The doctrine of estoppel may be invoked to preclude one party from asserting rights against a person who, in good faith, relied upon the conduct of the other party. The doctrine was set forth in Netv Jersey Suburban Water Co. v. Harrison, 122 N.J.L. 189, 3 A.2d 623 (E. & A.1939). The court described the doctrine as “grounded in equity and justice, that one shall not be permitted to *54 repudiate an act done or position assumed where that course would work injustice to another who, having the right to do so, has relied thereon.” Id. at 194, 3 A.2d 623.
Here, it cannot be said that an unjust act has taken place against GABGEO. GABGEO is correct in stating that many months of negotiations preceded the audit. GABGEO is also correct in stating that it paid a substantial amount of money to the Director for the purposes of satisfying Phaneromeni’s then known debt obligations. However, GABGEO cannot argue that it was not on notice that an audit would occur and that if liabilities were found, it would be held responsible. First, the Director issued a conditional tax clearance certificate letter on September 29, 1997. This transfer certificate stated, “This certificate ... shall not prevent further audit or the assessment of additional taxes, penalties, interest or fees.” The letter also stipulated that all taxes due from Phaneromeni were to be a lien and attach to the license of GABGEO. Furthermore, the April 1, 1998 letter from the Director to Mr. Duva, clearly notified Mr. Duva that:
[l]he Division is willing to forego its requirement to have sufficient monies held for payment of any liability determined to be due by an audit of the books and records of the seller, which is currently in progress.
Instead the Division will issue a conditional Clearance Certificate to allow the license to transfer and if, at a later date it is determined that additional liabilities are due and owing' as a result of the audit, the Division will pursue all avenues to collect said amounts from both the sellers and/or purchasers which could include the filing of docketed judgments and possible seizure of the liquor license itself, as a result of your failure to comply with N.J.S.A. 54:32B-22 (c).
[(emphasis added).]
Accordingly, as early as April 1, 1998, GABGEO was on notice that an audit was taking place or would take place and that if the Director discovered additional liabilities, he reserved the right to pursue all avenues of collection. Therefore, the Director is not estopped from proceeding against GABGEO. The April 1, 1998 letter was fair warning. Thus, I find the assessment against GABGEO valid.
V.
The Director argues that even though GABGEO is liable for the taxes, penalties and interest, GABGEO lacks standing to *55 contest the validity of the audited assessment. Specifically, the Director suggests, this court lacks jurisdiction to hear GABGEO’s claim that the 1999 audit is invalid because the challenge is time barred by the statute of limitations.
New Jersey law requires that a taxpayer file a protest of an audit with the Director, or a complaint with the Tax Court, within a specified period of time. N.J.S.A. 54:49-18(a) provides, in pertinent part:
If any taxpayer shall be aggrieved by any finding or assessment of the director, he may, within 90 days after the giving of the notice of assessment or finding, file a protest in writing signed by himself or his duly authorized agent, certified to be true, which shall sot forth the reason therefore, and may request a hearing.
[N.J.S.A. 54:49 — 18(a).]
N.J.S.A. 54:51A-14 provides “all complaints shall be filed within 90 days after the date of the action sought to be reviewed.” And N.J.S.A. 54:32B-21 provides:
(a) Appeal to tax court. Any aggrieved taxpayer may, within 90 days after any decision, order, finding, assessment or action of the Director of Taxation made pursuant to the provisions of this act, appeal therefrom to the tax court in accordance with the provisions of the State Tax Uniform Procedure Law, R.S. 5A:48-1 et seq.
(b) Appeal exclusive remedy of taxpayer. The appeal provided by this section shall be the exclusive remedy available to any taxpayer for review of a decision of the director in respect of the determination of the liability of the taxpayer for the taxes imposed by this act.
IN.J.S.A. 54:32B-21.]
Case law has strictly construed N.J.S.A. 54:51A-14 and N.J.S.A. 54:49-18. It has been held that the Tax Court lacks jurisdiction to hear the complaint of a taxpayer which was not filed until the day after the 90 day period. See Clairol, Inc. v. Kingsley, 109 N.J.Super. 22, 25, 262 A.2d 213, aff'd 57 N.J. 199, 270 A.2d 702 (1970); F.M.C. Stores v. Morris Plains, 100 N.J. 418, 423-25, 495 A.2d 1313 (1985) (citing many cases). Additionally, “[a] court has no power by virtue of this rule to relax or dispense with a statute of limitations passed by the Legislature and approved by the Governor.” Prospect Hill Apts. v. Flemington, 172 N.J.Super. 245, 1 N.J.Tax 224, 227, 411 A.2d 737 (Tax 1979).
The Director determined that Phaneromeni owed a total of $417,187.90 in sales tax and interest. By notice dated October 18, *56 1999, the Director informed Phaneromeni of this audit and of Phaneromeni’s appeal rights. The Director notified GAJBGEO, by notice dated May 15, 2003, of its liability for $429,790.45 as a result of the audit of Phaneromeni because of its noncompliance with the bulk sale notice provision. In this notice, the Director informed GABGEO of its right to an administrative hearing pursuant to N.J.S.A. 54:49-18. Plaintiff filed a letter of protest with the Division of Taxation on July 29, 2003. On August 10, 2004, the Director issued its final determination indicating a liability of $209,564 calculated as follows:
Tax $201,896
Penalty and Interest to September 20, 2004 257,668
$459,564
Credit for Monies Paid 250,000
Balance $209,564
A complaint to this court was filed on September 13, 2004. An additional complaint in this matter was filed with the Monmouth County Superior Court (Docket No. 007676-04) on September 14, 2004 and transferred to the Tax Court on September 21, 2004. The two matters were tried together. GABGEO filed a protest from the May 15, 2003 notice within 90 days and its complaint in this court was filed within 90 days of the August 10, 2004 final determination of the Director. Accordingly, GABGEO’s protest was timely filed. As a result of the trial in this court, I have found that GABGEO cannot avoid liability for those debts.
VI.
GABGEO’s complaint cannot be said to have been filed after the statutory period within which a protest or complaint must be filed. However, GABGEO did not comply either strictly or substantially with the bulk sale notice provisions of the Sales and Use Tax Act and is therefore responsible for the tax liabilities of Phaneromeni. Furthermore, the Director is not estopped from proceeding against GABGEO as GABGEO was on notice that it would be responsible for any liabilities of Phaneromeni uncovered by the audit.
*57 Although GABGEO and its attorney may have been confused regarding the “deal” they thought they had made with employees of the Division of Taxation, their failure to file a timely Bulk Sales Notice or obtain a formal closing agreement cannot serve to avoid the harsh and unanticipated consequences of their action. The bulk sales and closing agreement statutes are clear and unambiguous. Reliance on verbal representations of Division of Taxation employees carry risks that clients represented and advised by attorneys must assume. The statutes are in place to protect the state against confusion of taxpayers; lawyers are hired to protect their clients from such confusion. Although the government must turn square corners, F.M.C. Stores v. Morris Plains, supra, 100 N.J. at 426, 495 A.2d 1313, a misinformed employee of the State with limited authority cannot void the laws which protect the rest of the citizens. No evidence as to the question of the amount of the assessment was presented at trial, accordingly it must be affirmed.
The Director’s determination is affirmed and plaintiff’s appeal is denied.

 The original complaint filed in the Superior Court sought to avoid the consequences of GABGEO's tax delinquencies which might have included non-renewal of its liquor license and sale of its liquor license. The renewal and sale are controlled by the Township and the ABC but were completely dependent on the tax delinquencies. Thus, the ABC and the Township did not participate in the trial and briefing of this case.